ACTON CO., INC. OF MASSACHU-SETTS, Plaintiff-Appellant,

v.

BACHMAN FOODS, INC., et al., Defendants-Appellees.

No. 81–1441.

United States Court of Appeals, First Circuit.

Argued Nov. 6, 1981.

Decided Jan. 11, 1982.

---

Gerald A. Rosenthal, Boston, Mass., with whom William A. Zucker, and Gadsby & Hannah, Boston, Mass., were on brief, for plaintiff-appellant.

Daniel A. Pollack, New York City, with whom Martin I. Kaminsky, Edward T. McDermott, and Pollack & Kaminsky, New York City, were on brief, for defendants-appellees.

Before COFFIN, Chief Judge, DAVIS,* Judge, BREYER, Circuit Judge.

* Of the U.S. Court of Claims, sitting by designation.

COFFIN, Chief Judge.

This appeal involves an aborted business transaction in which the Acton Corp. (Acton) and its wholly owned subsidiary, Acton Co., Inc. of Massachusetts (ACIM), sought to purchase substantially all the assets of Bachman Foods, Inc. Negotiations between Acton and Culbro Corp., Bachman's parent corporation, culminated in the signing of a letter of intent on April 26, 1979 which provides for Acton "or a designated subsidiary" to purchase Bachman Foods. The letter stated that Acton was to assume most of Bachman's liabilities to take over Bachman's employee and pension obligations, and to lease space at a Culbro facility. Acton also furnished Culbro a $250,000 "forfeitable deposit" to be retained by Culbro if the transaction was not timely completed, "except by reason of the failure of Culbro to perform any term or condition" of the preliminary agreement. An additional deposit of $750,000 was to be paid by Acton on June 29, 1979; Acton was then to pay $11 million on the closing date, and to secure its subsidiary's note for the balance due, to be determined according to a formula set forth in the letter.

Acton subsequently created a new corporation, the appellant ACIM, and designated it as the subsidiary referred to in the letter of intent. Further discussions led to the signing of an Asset Purchase Agreement on June 12, 1979, to which Acton, ACIM, Culbro and Bachman were signatories. This agreement, whose enforceability along with that of the letter of intent is the underlying substantive issue in this case, designated ACIM as the purchaser and stated that ACIM was to undertake most of the obligations accepted by Acton in the prior letter of intent. But the agreement stated that Acton, not ACIM, was entitled to a refund of the $250,000 deposit in case of Culbro or Bachman's default. Moreover, as ACIM concedes, Acton was to guarantee unconditionally ACIM's performance under the purchase agreement, including all ACIM's obligations and liabilities. Finally, the agreement included terms which indicate

that it was to be binding and enforceable against both Acton and ACIM, and that both corporations would be entitled to relief in case Bachman or Culbro should fail to perform.

By letter dated June 29, however, Acton notified Culbro and Bachman that it had decided not to purchase Bachman because Culbro and Bachman had breached the agreement and had made material misrepresentations to Acton which had induced it to enter into the agreement. Shortly thereafter, Culbro and Bachman instituted a breach of contract action against Acton and ACIM in New York state court. Several weeks later, ACIM, without joining Acton as a co-plaintiff, filed this federal diversity action against Culbro and Bachman, seeking a declaration that no enforceable agreement exists between the parties and damages for fraud and misrepresentation. ACIM is a Massachusetts corporation; Acton, a Delaware corporation with its principal place of business in Massachusetts; Bachman, a Delaware corporation with its principal place of business in New Jersey; and Culbro is a New York corporation.

The district court granted defendants' motion to dismiss the action for failure to join Acton, which the court determined to be an indispensable party that could not be joined without destroying diversity jurisdiction. On appeal, ACIM argues that the court erred in concluding that Acton was an indispensable party and in failing to recognize that Acton could be joined under the court's ancillary jurisdiction. For the reasons that follow, we affirm.

## I.

Rule 19 of the Federal Rules of Civil Procedure provides for the joinder to a suit of parties needed for its just adjudication. The Rule furthers several related policies, including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them. Rule 19(a) sets forth three types of parties to be joined if feasible; but if joinder will divest the court of subject matter jurisdiction, Rule 19(b) directs the court to "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed."

There is little doubt that Acton, as a party to the letter of intent and to the purchase agreement, should be joined to this action if feasible. Each of the policies noted above would be served by joinder of Acton. To begin, Acton played a substantial role in negotiating both agreements; indeed, ACIM did not even exist in April 1979 when the letter of intent was signed. Thus Acton may have rights under this preliminary agreement not shared by ACIM. Moreover, according to the express terms of the purchase agreement, Acton and not ACIM would be entitled to refund of the $250,000 deposit. Unless Acton were bound by the results of ACIM's suit, it would remain free to commence a new action on its claims. Acton's presence is therefore desirable not only to avoid piecemeal and duplicative litigation, but also to provide complete relief to the appellees. *See* Rule 19(a)(1).

In addition, Acton, as ACIM's parent corporation and as ACIM's guarantor, might be bound by ACIM's suit under the doctrine that res judicata applies not only to the actual parties but also to those in privity with the parties. *See, e.g., General Foods Corp. v. Massachusetts Dep't of Public Health*, 648 F.2d 784, 787–90 (1st Cir. 1981); *Pan American Match, Inc. v. Sears, Roebuck & Co.*, 454 F.2d 871, 874 (1st Cir.), *cert. denied*, 409 U.S. 892, 93 S.Ct. 113, 34 L.Ed.2d 149 (1972). If so, to proceed in Acton's absence might impair Acton's interest in the controversy very significantly. Even if Acton would not be legally bound, an adverse ruling would be a persuasive precedent in a subsequent proceeding, and would weaken Acton's bargaining position for settlement purposes. In either case, to proceed without Acton might "as a practical matter impair or impede" Acton's ability to protect its interest in this matter. Rule

19(a)(2)(i). Acton is therefore a party to be joined to this action unless doing so will deprive the court of subject matter jurisdiction.

## II.

The sole basis for federal court jurisdiction over this case is diversity of citizenship, 28 U.S.C. § 1332. The statute conferring diversity jurisdiction has long been interpreted to require complete diversity—opposing parties may not be citizens of the same state. *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806). It is undisputed that both Acton and Bachman are citizens of Delaware under 28 U.S.C. § 1332(c); and Acton, if joined, would be aligned with ACIM as party plaintiff. Acton's joinder as co-plaintiff would thus appear to destroy diversity jurisdiction. Appellant argues, however, that Acton can be joined to the suit under the doctrine of ancillary jurisdiction.

■ Ancillary jurisdiction is designed to enable a federal court having subject matter jurisdiction over a dispute to resolve closely related claims lacking an independent jurisdictional basis. Although Article III restricts federal courts to adjudicating certain enumerated "cases or controversies", once a court acquires jurisdiction over such a case, fairness to the litigants or judicial economy may dictate that related claims arising out of the same core controversy be considered at the same time. The Supreme Court has thus interpreted Article III to empower federal courts to adjudicate state law claims when they derive from the same "nucleus of operative fact" involved in a substantial claim arising under federal law, and when the claims are such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 371, 98 S.Ct. 2396, 2401, 57 L.Ed.2d 274 (1978), quoting *UMW v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

The scope of ancillary jurisdiction is limited not only by Article III, but also by the applicable statutory grant of jurisdiction to the federal courts. *Kroger, supra*, 437 U.S. at 372, 98 S.Ct. at 2401–02; *FDIC v. Otero*, 598 F.2d 627, 631 (1st Cir. 1979). The relevant statute here, 28 U.S.C. § 1332, was recently interpreted by the Supreme Court in *Kroger, supra*. In *Kroger*, the Court held that even though plaintiff's claim against a third party defendant arose out of the same factual context as plaintiff's diversity claim against the original defendant, the Court lacked jurisdiction over the additional claim because plaintiff and third party defendant were citizens of the same state.

The Court's holding that "neither the convenience of litigants nor considerations of judicial economy can suffice to justify extension of the doctrine of ancillary jurisdiction to a plaintiff's cause of action against a citizen of the same State in a diversity case", *id.* 437 U.S. at 377, 98 S.Ct. at 2404, was based on several factors. First, the statutory requirement of complete diversity, which should be strictly construed, could be readily circumvented by artful pleading if ancillary jurisdiction were to apply: a plaintiff could leave non-diverse defendants out of the original lawsuit and then wait for them to be impleaded or otherwise joined. *Id.* at 374–75, 377, 98 S.Ct. at 2402–03, 2404. Second, the Court stressed that ancillary jurisdiction is most appropriate in a defensive posture, when a defending party is "haled into court against his will"; a plaintiff "has chosen the federal rather than the state forum and must thus accept its limitations." *Id.* at 376, 98 S.Ct. at 2404. Finally, the Court noted that plaintiff's claim against the third party defendant was not truly "ancillary" since it was not logically dependent upon the underlying claim, but only factually similar. *Id.*

■ Applying these policies to the instant case, we conclude that Acton cannot be joined to this diversity action without destroying the court's subject matter jurisdiction. First, to allow Acton as co-plaintiff to bring its action against a non-diverse defendant would be to permit ACIM, Acton's wholly owned subsidiary, to create

diversity jurisdiction simply by omitting Acton from the original complaint and then waiting for Acton to be joined under Rule 19. Second, given the relationship between Acton and ACIM and the fact that they have substantially identical interests in the lawsuit, we are unable to view Acton as a party haled into federal court against its will and thus entitled to invoke ancillary jurisdiction; rather, ACIM has chosen a federal forum, and neither ACIM nor Acton can equitably complain about the court's jurisdictional limitations. Finally, Acton's claim against appellees is not truly "ancillary" or incidental to the resolution of ACIM's claim in the way that a defendant's indemnification action against an impleaded third party is ancillary to a plaintiff's underlying claim against defendant; here, the two claims are virtually identical. *Kroger's* holding that ancillary jurisdiction does not extend to a *plaintiff's* cause of action against a citizen of the same state in a diversity case thus bars this court from considering Acton's claim against appellees, where Acton and Bachman are both Delaware corporations.[1]

Appellant argues, however, that Acton could be joined to the suit if the appellees would assert a counterclaim for breach of contract against appellant and Acton. While appellees' counterclaim is not technically compulsory since it is the subject of an ongoing state court proceeding, *see* Fed.R. Civ.P. 13(a)(1), several courts have applied ancillary jurisdiction in similar contexts to allow a *defendant* to add a new party to a counterclaim which arises out of the same "transaction or occurrence" as the underlying claim. *See, e.g., H.L. Peterson Co. v. Applewhite*, 383 F.2d 430, 433–34 (5th Cir. 1967); *Union Paving Co. v. Downer Corp.*, 276 F.2d 468 (9th Cir. 1960); *Dery v. Wyer*, 265 F.2d 804, 807–08 (2d Cir. 1959).

The rationale of these cases, however, does not apply to the present controversy. Unlike parties in the cited cases, the appellees, defendants below, have chosen not to assert this counterclaim in federal court; rather, they have elected to pursue their ongoing state court action. Invoking ancillary jurisdiction based on the appellees' hypothetical "duty" to take all possible steps to enable Acton to join this suit contradicts the statutory policy of granting defendants the option of trying their cause of action in a forum of their prior choosing. *See H.L. Peterson Co., supra*, 383 F.2d at 433 n.3; *Union Paving Co., supra*, 276 F.2d at 470. Moreover, such a holding would fly in the face of the Supreme Court's admonition that ancillary jurisdiction is most appropriate to protect a defendant who is haled into federal court against his will from multiple and piecemeal litigation. We therefore agree with the district court that Acton cannot be joined to this suit without divesting the court of subject matter jurisdiction.

### III.

Having concluded that Acton's joinder would destroy diversity jurisdiction, we now turn to Rule 19(b) in order to determine whether the action should proceed in Acton's absence, or be dismissed, Acton "being thus regarded as indispensable". Rule 19(b) sets forth four factors to be considered in this analysis:

"[F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in

---

1. Our conclusion that under the facts of this case ancillary jurisdiction does not extend to Acton's joinder under Rule 19 is also supported by cases suggesting a broader rule that the doctrine should not be invoked whenever the joinder of necessary parties would destroy diversity. *See, e.g., Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 108, 88 S.Ct. 733, 737, 19 L.Ed.2d 936 (1968); *Haas v. Jefferson Nat'l Bank*, 442 F.2d 394, 396 (5th Cir. 1971); *Codagnone v. Perring*, 351 F.Supp. 1126 (D.R.I.1972). The most persuasive rationale for these cases, and one fully applicable to the present case, is that ancillary jurisdiction "presupposes the existence of an action that a federal court can adjudicate and should not be used to breathe life into a lawsuit that is not otherwise viable." 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1610, at 99–100 (1972).

the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

The district court, emphasizing the existence of a pending state court action raising identical issues to which all necessary actors were parties, ruled "that a consideration of the above enumerated factors" required dismissal of the federal action. We agree.[2]

The first factor weighs heavily in favor of dismissal. Our view of the prejudice to Acton as a result of proceeding in its absence tracks our earlier analysis under Rule 19(a): an adverse ruling would, as a practical matter, impair Acton's probability of success in a future proceeding and reduce Acton's ability to reach a favorable settlement. *See Provident Tradesmens Bank & Trust Co. v. Patterson, supra,* 390 U.S. at 110, 88 S.Ct. at 738; *Doty v. St. Mary Parish Land Co.,* 598 F.2d 885, 887 (5th Cir. 1979). Furthermore, to proceed with an incomplete federal action might prejudice appellees by subjecting them to inconsistent obligations. *See Provident Tradesmens, supra,* 390 U.S. at 110, 88 S.Ct. at 738; *Haas v. Jefferson Nat'l Bank, supra,* 442 F.2d at 398–99. For example, the federal court might order appellees to return the $250,000 deposit to ACIM, while a state court, considering a claim by Acton in the ongoing or a subsequent proceeding, might order appellees to return the deposit to Acton.

Appellant has suggested no way of shaping relief so as to lessen this prejudice, and we can think of none. An adverse judgment on the merits will necessarily affect Acton's interest in the action. Moreover, to proceed with the federal action will be duplicative of the ongoing state proceeding, regardless of how the federal judgment is shaped. While a federal court might enjoin a state proceeding raising issues decided in the federal action, *see, e.g., Southwest Airlines Co. v. Texas Int'l Airlines, Inc.,* 546 F.2d 84 (5th Cir.), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977), and the

doctrines of issue and claim preclusion would likely make a prior court's decision binding on a later court, the result would in any case be to complicate and enlarge what would otherwise be a relatively straightforward contract action in a single court.

Such a complex and duplicative scenario implicates the third factor, the adequacy of a judgment in Acton's absence, which the Supreme Court has identified with "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Provident Tradesmens, supra,* 390 U.S. at 111, 88 S.Ct. at 738–39. If res judicata did not apply, Acton would remain free, in principle, to initiate yet another suit on its claim. The public interest in avoiding piecemeal and inefficient litigation is especially strong where, as here, it is evident that the ongoing state court action will adjudicate the entire controversy. *See Evergreen Park Nursing and Convalescent Home, Inc. v. American Equitable Assurance Co.,* 417 F.2d 1113, 1116 (7th Cir. 1969).

Finally, the existence of an adequate state proceeding to which all interested parties have been joined confirms our conclusion that this action should be dismissed. The New York court is a particularly appropriate forum, since the purchase agreement indicates it "shall be governed and construed in accordance with the laws of the State of New York."

> "Equity and good conscience would seem to require that under circumstances such as those present here, parties should present their claims in a state court rather than attempt to manipulate jurisdiction by dropping plaintiffs with a substantial interest in the claim solely for the purpose of retaining jurisdiction in the federal court." *Potomac Electric Power Co. v. Babcock & Wilcox Co.,* 54 F.R.D. 486, 492–93 (D.Md.1972).

Our conclusion that Acton is an "indispensable" party under Rule 19(b) is supported by other cases holding that an action

---

**2.** Appellant urges that our review of the district court's Rule 19 analysis should be governed by the legal error standard, rather than the abuse

of discretion standard. We need not decide this issue, since whatever the standard, we agree with the court's disposition.

seeking rescission of a contract must be dismissed unless all parties to the contract, and others having a substantial interest in it, can be joined.[3] *See, e.g., Crouse-Hinds Co. v. Internorth, Inc.*, 634 F.2d 690, 701 (2d Cir. 1980); *Lomayaktewa v. Hathaway*, 520 F.2d 1324 (9th Cir. 1975), *cert. denied*, 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976); *Chiodo v. General Waterworks Corp.*, 380 F.2d 860, 866–67 (10th Cir. 1967); *Gottlieb v. Vaicek*, 69 F.R.D. 672 (N.D.Ill. 1975), *aff'd*, 544 F.2d 523 (7th Cir. 1976).

*The judgment of the district court is affirmed.*

---

**3.** Appellant cites *Bio-Analytical Services, Inc. v. Edgewater Hospital, Inc.*, 565 F.2d 450 (7th Cir. 1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978), for the proposition that a mere guarantor is not an indispensable party. But in that case, the absent guarantor was not a party to the contract, nor did the absentee have any rights under the contract. Acton's interest under the terms of the agreement, to which it was a party, was more than that of a mere guarantor. While appellant offers an affidavit of its vice-president which states that Acton's role was to be limited solely to that of guarantor, the affidavit consists of conclusory allegations without reference to specific facts. We do not feel bound to accept it as true, even in the context of a motion to dismiss. *Cf. Over the Road Drivers, Inc. v. Transport Insurance Co.*, 637 F.2d 816, 818–19 (1st Cir. 1980) (similar affidavit does not create triable issue of fact on summary judgment motion).