Hilton **LOPEZ**, et al., Plaintiffs,

v.

**SHEARSON AMERICAN EXPRESS, INC.**, et al., Defendants.

Civ. No. 86–1858 (JAF).

United States District Court,
D. Puerto Rico.

April 7, 1988.

Alice Net–Carlo, Garcia Rodon, Correa Marquez & Valderas, San Juan, P.R., for plaintiffs.

Humberto Guzmán-Rodríguez, Fiddler Gonzalez & Rodriguez, San Juan, P.R., Willkie Farr & Gallagher, New York City, for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

This is an action for breach of contract and loss of business reputation and credibility under the Civil Code of Puerto Rico. The plaintiffs allege diversity jurisdiction under 28 U.S.C. sec. 1332. The defendants filed motions to dismiss the amended complaint on several grounds, including failure to state a claim, the applicable statute of limitations, failure to join an indispensable party, and failure to allege fraud with particularity. Plaintiffs have opposed, and the matter is submitted for decision. We rest our decision on the facts alleged in the

complaint, affidavits, and documentary evidence. Because we find the plaintiffs have failed to join a non-diverse, indispensable party, Fed.R.Civ.P. 12(b)(7), we do not reach the remaining issues.

## I.

### Factual Background

In the amended complaint [1], Hilton López alleges he began a career as an investment banking associate with defendant Shearson American Express, Inc. ("Shearson") on March 1, 1982. Shearson is incorporated under the laws of Delaware and has its principal place of business in New York. Shearson maintained a branch office in Puerto Rico, and created a wholly-owned subsidiary, Shearson American Express, Inc. (Puerto Rico), in order to borrow 936 funds in Puerto Rico. See 26 U.S.C. sec. 936. Shearson and Shearson (Puerto Rico) maintained separate corporate identities, though Shearson (Puerto Rico) is a guaranteed subsidiary of Shearson under the provisions of Rule 322 of the New York Stock Exchange.

From 1981 to late 1983, a related litigant, Francisco Pujol ("Pujol") was President of the subsidiary, Shearson (Puerto Rico), and a Vice–President of Shearson. In 1982, Pujol notified Shearson's top management that Shearson was misrepresenting to the public that income from securities sold by Shearson (Puerto Rico) were tax-exempt to residents of Puerto Rico. Shearson and its officers responded by preparing a draft letter addressed to its clients that suggested the income from the securities might be taxable. Pujol refused to sign unless the letter contained an unequivocal disclosure regarding the taxable nature of the securities. Shearson never informed its clients the income was taxable.

Additionally, Pujol learned that officials of Shearson (Puerto Rico) and other defendants misused 936 funds, which he believed constituted violations of local and federal securities laws. He notified Shearson management, and demanded corrective action be taken against some of the defendants and that proper reports be filed with the local and federal authorities. In response, Shearson management directed Pujol not to take any action and not to file any reports.

From late September to early November 1983, Shearson assembled an "Internal Audit Team" in San Juan. Most of the individual defendants herein, as well as others, formed the New York-based contingent of the team. Pujol was initially a part of the Puerto Rico side of the audit group. The Audit Team found serious irregularities regarding the sale of securities and the use of 936 funds. On October 26, 1983, as irregularities unraveled, Pujol delivered to Shearson management a letter addressed to defendant Philip Hoblin, Executive–Vice President and General Counsel of Shearson, stating on the basis of the audit conducted thus far that Shearson's Puerto Rico counsel should be immediately consulted as to whether the local and federal authorities should be notified. Copies were sent to local counsel and members of the audit team. As a result, on the same day Pujol was temporarily suspended from his duties with Shearson and Shearson (Puerto Rico) until completion of the audit.

In late 1983, Shearson and Shearson (Puerto Rico) instituted arbitration against Pujol, and in 1984, Pujol, his wife, and the conjugal partnership filed suit against Shearson in this court, alleging a RICO claim, violation of Section 10(b) of the Securities Exchange Act and Rule 10b–5 and various tort, contractual, and civil code claims. In the arbitration, Pujol counterclaimed against Shearson on the identical causes of action he, his wife, and the conjugal partnership filed against Shearson in district court, with the exceptions of the RICO and 10(b)(5) claims. The panel of arbitrators dismissed Shearson's claims, and awarded Pujol over one million dollars pursuant to his counterclaims. The district thereafter dismissed his case, and the First Circuit affirmed in part, reversed in part,

---

1. The amended complaint dropped a civil RICO count, which was contained in the original com- plaint.

and remanded. *See Pujol v. Shearson/American Express, Inc.,* 829 F.2d 1201 (1st Cir.1987).

Pujol made full verbal and written reports to the Puerto Rico Department of the Treasury concerning the facts he discovered. Thereafter, the Treasury Department ordered Shearson to show cause as to why it should not revoke Shearson's license to handle 936 funds. Shearson did not answer the show cause order, and instead, surrendered its license.

On the afternoon of October 26, 1983, defendants Gayle McGuigan, an officer of Shearson, and Joseph Del Duca, an Executive Vice–President, called a meeting of all registered representatives of Shearson, Shearson (Puerto Rico), and Shearson's local branch, to announce Pujol's temporary suspension. Hilton López, working under the direction of Pujol, attended. They informed the group that no employee of the Shearson companies committed any wrongdoing, and there was no reason for any employee to inform the authorities of any wrongdoing.

From 1982 until the time of Pujol's suspension, López alleges that Shearson (Puerto Rico), Shearson and top management of the Shearson companies engaged in several fraudulent transactions involving the misappropriation of funds and violations of local and federal securities laws. The companies and management acted in concert both to accomplish the fraudulent and illegal transactions and to conceal them from the authorities and from Pujol, plaintiff López, and other employees of Shearson. The defendants continued this deception against López throughout late 1983, by continuing to reassure him there was no evidence of wrongdoing and nothing to report to the local or federal authorities.

Based upon the reassurances given to López, he claims that he was falsely induced into entering into a new employment contract with Shearson, to urge his clients to maintain their relationship with Shearson, and to reassure local and federal government officials that Shearson committed no violations. Furthermore, Shearson undercut him by informing local and federal government officials that López was no longer authorized to act for Shearson. López claims that Shearson reneged on its contractual commitments to pay him guaranteed income and salary pursuant to a compensation contract, and tarnished his reputation in the business community. As a result, López resigned and filed this suit.

## II.

### *Motion to Dismiss for Failure to Join an Indispensable Party*

#### A. Application of Rule 19 Criteria

In their Motion to Dismiss, defendants argue that Shearson (Puerto Rico) is an indispensable party under Fed.R.Civ.P. 19. The court must determine whether Shearson (Puerto Rico) is a "person to be joined if feasible" under the criteria of Rule 19(a). If the answer is in the affirmative, joinder will defeat diversity jurisdiction. The court must then determine, considering the factors listed in Rule 19(b), whether in "equity and good conscience the action should proceed" in its absence, or whether Shearson (Puerto Rico) is indispensable, and dismiss the case. In analyzing the entire matter, the court is mindful of three major, related policies underlying Rule 19: avoiding multiple and repetitive litigation, providing complete and effective relief in a single action, and protecting the interests of absent persons from the possible prejudicial effect of deciding a case without them. *Acton Co., Inc. of Massachusetts v. Bachman Foods, Inc.,* 668 F.2d 76, 78 (1st Cir.1982).

##### 1. *Rule 19(a) Criteria*

Our analysis focuses on Rule 19(a)(1), whether in Shearson (Puerto Rico)'s absence, complete relief can be accorded among the existing parties. Plaintiffs state that Shearson (Puerto Rico) was a fully guaranteed subsidiary of Shearson under the provisions of Rule 322 of the New York Stock Exchange.[2] They argue

---

**2.** Rule 322 provides that "[a]ll obligations and liabilities of a corporate subsidiary formed here-under shall be assumed or guaranteed by the member organization with which it is connected

the guarantee establishes joint and several liability between the two corporations, and that they may elect to sue one without the other. Under ordinary circumstances, a parent corporation is not liable for the acts and obligations of its subsidiaries. *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil*, 456 F.Supp. 831, 838 (D.Del.1978). In other words, but for the guarantee, Shearson would not normally be liable for the acts of Shearson (Puerto Rico). Under the law of Puerto Rico, to pierce the corporate veil requires "strong and robust evidence" that the parent has "that degree of control over the subsidiary as to render the latter a mere shell for the former." *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 905 (1st Cir.1980), *citing San Miguel Fertilizer Corp. v. P.R. Drydock & Marine Terminals*, 94 P.R.R. 403, 409 (1967).

 Bearing in mind the above, we note that plaintiffs' amended complaint alleges numerous instances of wrongdoing on the part of Shearson (Puerto Rico) or its officers and/or employees. These allegations indicate that Shearson (Puerto Rico) was, if not a primary participant, at least a very active participant in the events between 1982 and 1984 that gave rise to López' resignation and the filing of the complaint. The law appears very clear that where the subsidiary is the primary participant in a dispute involving both the parent and the subsidiary, the subsidiary is an indispensable party. *See Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553 (5th Cir.1985). There, the Fifth Circuit held that a subsidiary corporation should have been joined as an indispensable party in an action for tortious conversion of property. Only the subsidiary was involved in the events that gave rise to the complaint, but the plaintiffs sued the diverse parent under the *alter ego* doctrine. Because the subsidiary was the "primary participant" in the conversion, it's "presence [was] critical to the important issues in the litigation," and it was more than a "key witness." 754 F.2d at 559. The court also noted that case law rejects the *alter ego* doctrine as a means of avoiding joinder of a nondiverse

party. *Id.* at 559–60. *See also Environmental Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75–78 (2nd Cir.1984) (parent indispensable to breach of contract counterclaim where three of seven contracts did not involve the subsidiary and the remaining four had been assigned to the parent prior to the counterclaim).

Like the plaintiff in *Freeman*, plaintiffs seek to impose liability on Shearson for acts committed by Shearson (Puerto Rico). López must prove that Shearson (Puerto Rico) committed the fraudulent acts and misrepresentations in order to establish his tarnished reputation and credibility in the business community. Specifically, plaintiffs allege that Shearson (Puerto Rico) engaged in the following activity:

1) Shearson (Puerto Rico) was involved in transactions violating the U.S. Internal Revenue Code, the Puerto Rico statutes, and the Puerto Rico Department of Treasury Regulations. Amended Complaint at 4.11–4.13.

2) Shearson (Puerto Rico) and Shearson fraudulently misrepresented to the public that the income from securities sold by Shearson (Puerto Rico) were tax exempt to residents of Puerto Rico. Amended Complaint at 3.2–3.6; 4.1–4.4.

3) Shearson (Puerto Rico) officers mishandled 936 funds which constituted violations of local and federal securities laws. Amended Complaint at 3.7–3.10; 4.6–4.9.

4) Shearson (Puerto Rico) was involved in a scheme to defraud the municipality of Ponce, the Federal Home Loan Bank, and the "Authority." Amended Complaint at 4.11–4.14.

5) Shearson (Puerto Rico) officers used customer funds to purchase a $40,000.00 "paso fino horse," and Shearson officials were involved in covering up the purchase. Amended Complaint at 4.18.

6) Shearson (Puerto Rico), Shearson, and officers of both, fraudulently and with intent to deceive misrepresented to

and such member organization shall be fully

responsible for all acts of such subsidiary."

López that no officer or employee of the Shearson companies committed any wrongdoing. Amended Complaint.

Clearly, Shearson (Puerto Rico)'s "presence is critical to the disposition of the important [factual] issues in the litigation." *Freeman*, 754 F.2d at 559. *See also Acton Co. Inc. of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir.1982) (parent corporation a party to be joined as a plaintiff if feasable in declaratory contract action because it "played a substantial role in negotiating" a letter of intent and purchase agreement with the defendant).

Furthermore, it appears with little doubt that López was employed by Shearson (Puerto Rico). In his amended complaint, López alleges he was employed by Shearson. Though the court is normally required to treat all well-pleaded allegations in the complaint as true for purposes of a motion to dismiss, *Pujol v. Shearson/American Express, Inc.*, 829 F.2d at 1202, the court need not treat as true those factually unsupported allegations. *Bricker v. Crane*, 468 F.2d 1228, 1232–33 (1st Cir. 1972). The parties have briefed this matter and submitted affidavits and documentary evidence to support their respective positions. The proofs roundly support the contention that López was an employee of Shearson (Puerto Rico), rather than an employee of Shearson:

1) An Exhibit dated August 26, 1983, entitled "Investment Banking Personnel of the Puerto Rico Subsidiaries of Shearson/American Express, Inc." lists Hilton López as an "Investment Banking Associate of the Subsidiary." It was attached to an August 26, 1983 memo from Pujol to Albert Bellas regarding the Investment Banking activities in Puerto Rico. It also lists Pujol and others as employees of the Subsidiary.

2) On October 27, 1983, López executed a sworn statement regarding the meeting called by McGuigan and Del Duca in which he attests: "I am employed by Shearson American Express, Inc. (Puerto Rico) ("Shearson") as an Investment Banking Associate of the Puerto Rico Office."

3) His January 30, 1984 resignation letter to Philip Waterman reads: "It is with deep regret that I hereby irrevocably resign from my position at Shearson/American Express Inc. (Puerto Rico) effective January 31, 1984."

4) A February 9, 1984 letter to Philip Waterman refers to the resignation letter and states his "resignation of January 31, 1988 as Investment Banking Associate of Shearson/American Express Inc. (Puerto Rico) ("Shearson") was forced on me by...."

5) He again requested Waterman's personal intervention in a February 27, 1984 letter stating: "I make reference to my letter of February 9, 1984 in regards to the compensation owed to me by Shearson/American Express Inc. (Puerto Rico) ("Shearson")...."

6) In a December 8, 1983 letter to Waterman, López complains of the treatment received with Shearson and he signed the letter "Sincerely, Shearson/American Express Inc. (Puerto Rico), Hilton C. López, Investment Banking Associate."

It is a fact that the above proofs indicate both Hilton López and the Shearson companies considered López an employee of Shearson (Puerto Rico). Pujol listed him as an employee of Shearson (Puerto Rico), and López regarded himself as a Shearson (Puerto Rico) employee in his correspondence to Philip Waterman. The only proof tending to contradict the above is a sworn statement executed by López on January 11, 1988, attesting that "[he] was an employee of Shearson/American Express Inc. ("Shearson") from March 1, 1982 until January 31, 1984, assigned to work with Shearson/American Express, Inc. (Puerto Rico) ("Shearson–P.R.") as an Investment Banking Associate." López has done no more than flatly deny in 1988 a fact that he and the Shearson companies readily took for granted in 1982–84.

Clearly, Shearson (Puerto Rico) is a person to be joined under Rule 19(a). Shearson (Puerto Rico) employed López and was a major participant in the activities that gave rise to plaintiffs' cause of action. Merely because plaintiffs could execute a favorable judgment against the parent corporation is not sufficient to avoid joinder of the subsidiary whose presence is needed for a full adjudication of the controversy. *See Freeman,* 754 F.2d at 559–60, rejecting the *alter ego* doctrine as a means of avoiding joinder.

### B. Rule 19(b) Factors

Because joinder will defeat diversity jurisdiction, the court must now determine whether in equity and good conscience the action may proceed without Shearson (Puerto Rico), or whether it is an indispensable party, and dismiss the case. In assessing this, the court must consider, among other things, four factors: (1) to what extent a judgment rendered in Shearson (Puerto Rico)'s absence might prejudice it or the existing parties, (2) to what extent can the court fashion a judgment or shape relief to lessen or avoid the prejudice, (3) whether the judgment rendered in Shearson (Puerto Rico)'s absence will be adequate, and, (4) whether the plaintiffs will have an adequate, alternate forum. Fed.R. Civ.P. 19(b).

■ Consideration of the first factor weighs in favor of dismissal. To allow the action to proceed in Shearson (Puerto Rico)'s absence would lead to a substantial risk of prejudice against it. Because the amended complaint alleges Shearson (Puerto Rico) committed numerous fraudulent transactions and violated local and federal securities laws, a judgment for the plaintiffs could impair Shearson (Puerto Rico)'s ability to defend itself against subsequent lawsuits. Furthermore, a judgment in this case may have a preclusive effect as to those factual issues involving Shearson (Puerto Rico)'s alleged misconduct. *See Arecibo Radio Corp. v. Commonwealth of P.R.,* 825 F.2d 589, 590 n. 1 (1st Cir.1987); *Pujol v. Shearson/American Express, Inc.,* 829 F.2d 1201 (1st Cir.1987); *Acton*

*Co., Inc. of Massachusetts v. Bachman Foods, Inc.,* 668 F.2d 76, 78 (1st Cir.1982). Also, if the preclusive effect did not apply, in the event the plaintiffs obtained an unfavorable judgment here, they could bring another action against Shearson (Puerto Rico) in the local courts. Our conclusion here furthers the interest of avoiding multiple and inefficient litigation. *Acton,* 668 F.2d at 81; *Provident Tradesmen's Bank and Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

Consideration of the second factor, the extent to which protective provisions in the judgment, the shaping of relief, or other measures can lessen or avoid the prejudice, also weighs in favor of dismissal. Because Shearson's liability would, in part, be derivative of Shearson (Puerto Rico)'s wrongdoing, there is no way that plaintiffs can obtain a favorable money judgment without a necessary finding that Shearson (Puerto Rico) is the cause of their injuries. As a practical matter, the prejudice to Shearson (Puerto Rico) cannot be lessened or avoided.

The third factor, which overlaps and tracks the analysis under Rule 19(a), weighs heavily in favor of requiring Shearson (Puerto Rico)'s presence. Even where liability between the parent and subsidiary may be joint and several, both should be present where the plaintiff's claims are "largely directed against" the parent corporation. *H.D. Corp. of Puerto Rico v. Ford Motor Co.,* 791 F.2d 987, 993 (1st Cir.1986). In *H.D. Corp.,* the court held that under the criteria of Rule 19(b), the nondiverse parent, an automobile manufacturer, was an indispensable party in an action against its wholly-owned subsidiary, an automobile dealer. In *H.D. Corp.,* plaintiffs failed to state a claim under federal law. Pendent Commonwealth claims were largely directed against the parent: the parent was a signatory to a termination and repurchase contract that formed the basis of three counts, and the remaining two Commonwealth counts alleged the parent violated the Puerto Rico Dealer's Act, 10 L.P.R.A. sec. 278 et seq., by breaching dealership agreements with one of the plaintiffs. Notwithstanding that joint and several lia-

bility might exist among the parent and subsidiary, the court found "it would be highly impractical to permit plaintiffs' action to proceed solely against [the subsidiary]." *H.D. Corp.,* 791 F.2d at 993.[3]

Finally, an adequate alternative forum exists in the local courts. The Superior Court of Puerto Rico is particularly appropriate, given that plaintiffs' claims, breach of contract and tort under the Civil Code, are traditionally matters of local law. Furthermore, we can find no principled reason to strain in order to find diversity jurisdiction in a case where the local court can grant "full workable and reasonable" relief. *Stevens v. Loomis,* 334 F.2d 775, 778 (1st Cir.1964).

### C. Conclusion

The jurisprudence is fairly uniform in cases involving a corporate parent and subsidiary that where plaintiffs' claims are largely directed against the nondiverse corporation or where the corporation is a primary participant in the facts that give rise to the complaint, that corporation is an indispensable party. Additionally, there seems to be no real significance whether the nondiverse corporation is a parent or a subsidiary. In *Freeman,* the court rejected the *alter ego* doctrine as a basis for avoiding joinder of the nondiverse subsidiary, because it was a primary participant in the events causing the tortious injury. In *H.D. Corp.,* even though liability may have been joint and several, the parent was indispensable because the state law claims were largely directed against it.

Those principles applied here require a finding that Shearson (Puerto Rico) is both a party to be joined if feasible under Rule 19(a) and an indispensable party under Rule 19(b). This conclusion is mandated even if we assume that Shearson (Puerto Rico) was not the primary participant in the events that gave rise to López' resignation and his claimed injuries. Its activities were so closely associated and linked with those of Shearson that it would be impossible to

establish a cause of action against Shearson, without requiring the presence of Shearson (Puerto Rico).

Accordingly, we grant the motion to dismiss for failure to join an indispensable party, and dismiss the complaint. Because we dismiss on jurisdictional grounds, we do not reach the remaining issues.

IT IS SO ORDERED.

---

**3.** An identical lawsuit against the parent and subsidiary was pending in the local courts and finding indispensability furthered the interests of avoiding multiple litigation and providing an efficient settlement of the controversy. Furthermore, the plaintiffs had an adequate forum in the Commonwealth courts. *H.D. Corp.,* 791 F.2d at 993.