**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA,
Plaintiff-Appellant,

v.

RITE AID OF SOUTH CAROLINA,
INCORPORATED,
Defendant-Appellee,

and

No. 99-1539

GABRIELLE HUNDLEY, Gabrielle
Hundley, a minor under the age of
14 years, by and through her
Guardian ad Litem, Peggy W.
Hundley; RONALD HUNDLEY; PEGGY
HUNDLEY,
Defendants.

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
Dennis W. Shedd, District Judge.
(CA-97-2056-0-19)

Argued: March 2, 2000

Decided: April 20, 2000

Before WILKINSON, Chief Judge, and WILLIAMS
and MICHAEL, Circuit Judges.

_____

Affirmed by published opinion. Judge Williams wrote the opinion, in
which Chief Judge Wilkinson and Judge Michael joined.

**COUNSEL**

**ARGUED:** Joel Wyman Collins, Jr., COLLINS & LACY, P.C., Columbia, South Carolina, for Appellant. James C. Gray, Jr., NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina, for Appellee. **ON BRIEF:** Eric G. Fosmire, COLLINS & LACY, P.C., Columbia, South Carolina, for Appellant. Elizabeth Scott Moise, William C. Wood, Jr., NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina, for Appellee.

_____

**OPINION**

WILLIAMS, Circuit Judge:

National Union Fire Insurance Company of Pittsburgh (National Union) appeals the district court's dismissal of its complaint against Rite Aid of South Carolina (RASC). National Union sought a declaration that the commercial general liability policy it issued to Rite Aid Corporation (Rite Aid), RASC's parent company, did not obligate National Union to provide coverage to RASC in two consolidated product liability lawsuits. The district court concluded that dismissal was appropriate because Rite Aid was a necessary and indispensable party to the declaratory judgment action under Federal Rule of Civil Procedure 19 whose joinder would destroy complete diversity of citizenship, the only basis for subject matter jurisdiction. We hold that the district court did not abuse its discretion in finding that Rite Aid was a necessary and indispensable party. Accordingly, we affirm the district court's dismissal of National Union's complaint for lack of subject matter jurisdiction.

I.

Rite Aid is a Delaware corporation that has its principal place of business in Pennsylvania. Rite Aid negotiated with National Union, also a Pennsylvania citizen, to obtain commercial general liability coverage for itself and its subsidiaries, including RASC.[1] As a result

_____

[1] National Union is a Pennsylvania corporation with its principal place of business in Pennsylvania. RASC is a South Carolina corporation with its principal place of business in South Carolina.

2

of these negotiations, National Union issued to Rite Aid Policy No. RMGL0174087 (the policy), with effective dates of January 1, 1995 to January 1, 1996. The policy was delivered to Rite Aid in Pennsylvania and Rite Aid made all premium payments on the policy from Pennsylvania.

The policy provides for general liability coverage for Rite Aid and its subsidiaries with an aggregate limit of $4,750,000 and a per occurrence limit of the same amount.[2] Under the policy, Rite Aid has a self-insured retention obligation of $250,000 per occurrence, and National Union's insurance applies in excess of the retention amount. In other words, if a Rite Aid subsidiary suffers a loss covered by the policy, Rite Aid is required to cover the first $250,000 of the loss and National Union is responsible for the subsidiary's loss in excess of $250,000, up to the $4,750,000 policy limits.

Rite Aid manages all aspects of the policy for itself and its subsidiaries through its Department of Risk Management, which is located at Rite Aid's corporate headquarters in Pennsylvania. To help with the claims handling process, Rite Aid engaged a third-party administrator, The MacDonald Companies, Inc. (MacDonald), which was selected with the approval of National Union. At all times relevant to this action, Rite Aid would report a claim to MacDonald, and MacDonald would report certain claims as required to National Union. Rite Aid also employed in-house counsel and a Director of Claims; RASC had neither.

The policy sets forth certain notice requirements that Rite Aid is required to follow in the event of an occurrence, claim, or suit. By endorsement, the policy explicitly states that knowledge of an occurrence by anyone other than the Corporate Risk Manager of Rite Aid does not constitute notice of such occurrence to any insured, including RASC. Collateral agreements between Rite Aid and National, set forth in memoranda between MacDonald and AIG Risk Management (AIG),[3] the authorized representative of National Union for claims

_____

[2] The aggregate limit applies to Rite Aid and all the subsidiary insureds combined, regardless of the particular subsidiary involved.
[3] The record also mentions an entity named AIG Vendor Services. Because the parties make no meaningful distinction between AIG Risk Management and AIG Vendor Services, for the sake of convenience, we refer to both entities simply as AIG.

3

administration and analysis, further define the reporting procedures Rite Aid is required to follow. National Union takes the position that these agreements are supplemental in nature, while Rite Aid contends that the reporting requirements in these agreements supersede the reporting requirements in the policy.

In 1995, during the policy period, RASC allegedly misfilled a prescription, and a customer suffered serious injuries as a result. The customer, who was a minor, and her parents sued RASC for her injuries in two separate actions in the Court of Common Pleas of York County, South Carolina. These actions were referred to Rite Aid's in-house counsel and to its Department of Risk Management, which in turn referred the actions to local South Carolina counsel. According to AIG, it was notified of the underlying claim by telephone on October 1, 1996, less than a week before the consolidated cases were scheduled for trial. In letters addressed to Rite Aid's Director of Claims dated October 8, 1996 and October 9, 1996, National Union reserved its right to deny coverage. While the jury was deliberating, National Union denied coverage by letter addressed to Rite Aid's Director of Claims dated October 10, 1996. The jury subsequently returned verdicts for the customer and her parents totaling $5,020,000 in actual damages and $11,000,000 in punitive damages. RASC appealed the judgment, which was affirmed by the Court of Appeals of South Carolina. See Hundley v. Rite Aid of South Carolina, Inc., No. 3126, 2000 WL 225531 (S.C. Ct. App. Feb. 28, 2000).

On July 9, 1997, National Union commenced this action in the United States District Court for the District of South Carolina seeking a declaration that RASC failed to comply with the notice provisions of the policy and other established reporting procedures, that this failure substantially prejudiced National Union, and, therefore, that National Union had no obligation to provide coverage in the underlying lawsuits. The complaint alleged jurisdiction based upon diversity of citizenship between the parties.[4] On January 16, 1998, Rite Aid and RASC filed a parallel action in the Court of Common Pleas of Cumberland County, Pennsylvania, against National Union for breach of

_____

[4] The minor child and her parents who were awarded the $16,020,000 verdict against RASC were initially also named as defendants but were subsequently dismissed from the action by stipulation.

4

contract, for a declaratory judgment that National Union was obligated to defend and indemnify Rite Aid and RASC with respect to the underlying lawsuit, and for bad faith. Four days later, RASC moved to dismiss the instant suit pursuant to Federal Rules of Civil Procedure 12 and 19 on the ground that Rite Aid was a necessary and indispensable party to the action whose joinder would destroy complete diversity of citizenship.

On RASC's motion, the district court first concluded that Rite Aid was a necessary party under Federal Rule of Civil Procedure 19(a) because it possessed at least two important interests that it should be entitled to protect. Because joinder of Rite Aid would destroy complete diversity, the district court then proceeded to determine whether under Rule 19(b), Rite Aid was an indispensable party without whom the court could not in equity and good conscience proceed. After concluding that Rite Aid was such an indispensable party, the district court granted RASC's motion to dismiss for lack of subject matter jurisdiction. National Union filed a timely notice of appeal.

II.

On appeal, National Union argues that Rite Aid is not a necessary party under Federal Rule of Civil Procedure 19 because its interests are adequately represented by RASC, an additional named insured under the policy. In particular, National Union argues that Rite Aid has no interest in the litigation separate and distinct from that of RASC because both parties desire a finding of coverage under the National Union policy, and that to the extent Rite Aid's testimony and documents are relevant to the notice issue, it may fully and adequately contribute to the resolution of this issue as a witness rather than as a party. National Union also contends that Rite Aid is not an indispensable party under Rule 19 because a judgment rendered in its absence would be adequate and dispositive and would not prejudice Rite Aid. Specifically, National Union contends that regardless of whether Rite Aid is joined in the action, the lone issue for the district court to resolve is whether there is coverage or not; Rite Aid's interest in managing the aggregate limits of the policy is not impeded by its exclusion from this suit because the judgment against Rite Aid exceeds those limits.

5

Federal Rule of Civil Procedure 19 sets forth a two-step inquiry for a district court to determine whether a party should be joined in an action. First, the district court must determine whether the party is "necessary" to the action under Rule 19(a). [5] If the court determines that the party is "necessary," it must then determine whether the party is "indispensable" to the action under Rule 19(b). [6] See Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 917-18 (4th Cir. 1999). Because Rite Aid's joinder would destroy complete diversity of citizenship, we must affirm the district court's dismissal of this action for lack of jurisdiction if we agree with the district court that Rite Aid is a necessary and indispensable party. See Owens-

_____

[5] Rule 19(a) provides in pertinent part as follows:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

[6] Rule 19(b) provides as follows:

> If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir. 1999); Schlumberger Indus. v. National Sur. Corp., 36 F.3d 1274, 1288 (4th Cir. 1994).

"Dismissal of a case is a drastic remedy, however, which should be employed only sparingly." Keal, 173 F.3d at 918. In determining whether to dismiss a complaint, a court must proceed pragmatically, "examin[ing] the facts of the particular controversy to determine the potential for prejudice to all parties, including those not before it." Id. The district court's Rule 19 dismissal of National Union's action is reviewed for abuse of discretion. See Coastal Modular Corp. v. Laminators, Inc., 635 F.2d 1102, 1108 (4th Cir. 1980) ("The inquiry contemplated by Rule 19 . . . is addressed to the sound discretion of the trial court.").**7** We review the district court's findings of fact underly-

_____

**7** The circuits vary greatly in the standard of review to apply to a district court's Rule 19 determination. The Ninth and Tenth Circuits apply an abuse of discretion standard to the district court's determination under both 19(a) and 19(b). See Washington v. Daley , 173 F.3d 1158, 1165 (9th Cir. 1999); Davis v. United States, 192 F.3d 951, 957 (10th Cir. 1999). The Sixth Circuit applies an abuse of discretion standard to the district court's analysis under 19(a) and a de novo standard to its analysis under 19(b). See Keweenaw Bay Indian Community v. Michigan, 11 F.3d 1341, 1346 (6th Cir. 1993). The First, Second, Third, Fifth, Eighth, Eleventh, and D.C. Circuits do not appear to have decided on a standard for a district court's determination under 19(a) and apply an abuse of discretion standard to its determination under 19(b). See Tell v. Trustees of Dartmouth College, 145 F.3d 417, 418-19 (1st Cir. 1998); Jota v. Texaco, Inc., 157 F.3d 153, 161 (2d Cir. 1998); Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 403-04 (3d Cir. 1993); Pulitzer-Polster v. Pulitzer, 784 F.2d 1305, 1309 (5th Cir. 1986); United States ex rel. Steele v. Turn Key Gaming, Inc., 135 F.3d 1249, 1251 (8th Cir. 1998); Kickapoo Tribe of Indians v. Babbitt, 43 F.3d 1491, 1495 (D.C. Cir. 1995). The Seventh Circuit has expressly declined to adopt a standard of review at all. See Thomas v. United States, 189 F.3d 662, 666 (7th Cir. 1999).

In Owens-Illinois, Inc. v. Meade, 186 F.3d 435 (4th Cir. 1999), this Court stated, in the context of a district court's dismissal of a motion to compel arbitration for failure to join a necessary and indispensable party whose joinder would destroy diversity, that a district court's order dismissing a case for lack of subject matter jurisdiction is reviewed de novo. See id. at 439. This statement correctly articulates the law in general, but

ing its Rule 19 determination for clear error. <u>See Tell v. Trustees of</u> <u>Dartmouth College</u>, 145 F.3d 417, 418 (1st Cir. 1998).

A.

The initial issue we must address is whether Rite Aid is a necessary party under Rule 19(a). We agree with the district court that Rite Aid is a necessary party to this action for two reasons. First, permitting this action to go forward without Rite Aid would impair or impede Rite Aid's ability to protect a "claim[ed] . . . interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(2)(i). National Union concedes that Rite Aid possesses a claimed interest relating to the subject of the action, but argues that the interest is adequately represented by RASC because it is limited to whether the policy provides coverage or not. If RASC is able adequately to represent Rite Aid's interest, we would be inclined to conclude that Rite Aid's ability to protect its interest is not impaired or impeded by its absence from this suit. <u>See</u> <u>Washington v. Daley</u>, 173 F.3d 1158, 1167 (9th Cir. 1999); <u>Tell</u>, 145 F.3d at 419. A court should hesitate to conclude, however, that a litigant can serve as a proxy for an absent party unless the interests of the two are identical. <u>See id.</u>

Like the district court, we do not believe that Rite Aid's interest in the subject of this action can be characterized as simply a matter of coverage. Because the main issue in this declaratory action is whether National Union was given timely notice of the underlying tort action,

_____

does not address the standard of review to apply to a district court's dismissal based upon its finding that a non-party whose joinder to a suit would destroy subject matter jurisdiction is necessary and indispensable under Rule 19. In <u>Coastal Modular Corp. v. Laminators, Inc.</u>, 635 F.2d 1102 (4th Cir. 1980), this Court enunciated an abuse of discretion standard of review in the context of a district court's denial of a motion for joinder of a non-party upon finding that the non-party was not a necessary party under Rule 19(a). <u>See id.</u> at 1108. In light of the Supreme Court's admonition that the Rule 19(b) inquiry is fact-specific, <u>see Provident Tradesmens Bank & Trust Co. v. Patterson</u>, 390 U.S. 102, 118 & n.14 (1968), we believe that this abuse of discretion standard of review applies to a district court's determination under 19(b) as well.

8

the district court's adjudication of this case on the merits will necessarily require it to interpret the notice provisions of the policy and other agreements between National Union and Rite Aid.**8** As the contracting party and the party charged with receiving and giving notice of claims under the policy and other agreements, Rite Aid has a direct interest in the district court's determination of its reporting obligations as well as an interest in coverage for RASC. By contrast, RASC's interest, as a beneficiary of the policy, is limited solely to coverage in this particular case. Resolution of the notice issue will undoubtedly have ramifications for other cases because in deciding whether National Union received timely notice, the district court will necessarily have to determine what the reporting requirements are and what conduct satisfies those requirements. Because Rite Aid possesses an interest separate and distinct from that of RASC, we agree with the district court that RASC is not able adequately to represent this interest in Rite Aid's absence.

Accordingly, we conclude that the district court did not err in concluding that permitting this suit to proceed without Rite Aid will "impair or impede" Rite Aid's ability as a contracting party to protect a claimed interest relating to the subject of the action. See Acton Co. v. Bachman Foods, Inc., 668 F.2d 76, 78-79 (1st Cir. 1982) (holding that parent corporation that played a substantial role in negotiating, and was party to, agreement was a necessary party to suit brought by subsidiary alleging breach of that agreement); F & M Distribs., Inc. v. American Hardware Supply Co., 129 F.R.D. 494, 497-98 (W.D. Pa. 1990) (holding that corporation that was party to contract was necessary party to suit seeking damages against third party for corporation's alleged breach of that contract); cf. Keal, 173 F.3d at 918 (holding that union was necessary party to suit that sought to vacate joint grievance panel's interpretation of collective bargaining agree-

_____

**8** The record suggests that National Union will likely argue that the reporting requirements in the collateral agreements between National Union and Rite Aid, set forth in the memoranda between MacDonald and AIG, supplement the reporting requirements of the policy and that under both Rite Aid failed to give timely notice to National Union. Rite Aid will likely argue that the reporting requirements in the collateral agreements supersede the reporting requirements of the policy and that under the former Rite Aid gave timely notice to National Union.

9

ment to which union was a party). Because the result of the suit turns on Rite Aid's conduct in notifying National Union of the underlying tort suit through its third-party administrator, we reject National Union's contention that Rite Aid can adequately contribute to this action as a witness and believe instead that fairness dictates that Rite Aid be given the opportunity to protect its separate and distinct interest as a party.[9] See Freeman v. Northwest Acceptance Corp., 754 F.2d 553, 559 (5th Cir. 1985) (holding that subsidiary was a necessary party to conversion suit against parent corporation rather than merely "a key witness whose testimony would be of inestimable value" because subsidiary's conduct was subject of suit (internal quotation marks omitted)).

Second, permitting this suit to continue could subject National Union to "a substantial risk of incurring" conflicting legal obligations. Fed. R. Civ. P. 19(a)(2)(ii). At this time, a parallel action brought by Rite Aid and RASC is pending in Pennsylvania state court. If this district court action is allowed to proceed, one court might find that National Union did not receive timely notice and, therefore, is not obligated to defend and indemnify Rite Aid and RASC in the underlying lawsuit. The other court might reach the opposite conclusion. This very real possibility of inconsistent judgments weighs heavily in favor of finding that Rite Aid is a necessary party.[10] See Owens-Illinois, 186

_____

[9] Because the Court of Appeals of South Carolina affirmed the $16,020,000 verdict against RASC, which is greater than the aggregate limits of the policy, Rite Aid's interest in managing these limits among itself and its subsidiaries is not impeded by its exclusion from the instant suit. Nevertheless, we believe that Rite Aid's interest in the district court's determination of its reporting obligations under the contract and the course of dealing with National Union is sufficient to make Rite Aid a necessary party under Rule 19(a)(2)(i).

[10] National Union argues that RASC's motion to dismiss for lack of subject matter jurisdiction is a pretext for forum shopping in light of the fact that it was brought four days after Rite Aid and RASC filed their parallel action in Pennsylvania state court. We disagree. National Union fails to identify any reason why RASC would "shop" for a Pennsylvania forum as opposed to a South Carolina forum. RASC's argument that the Pennsylvania state court was selected because it was a forum in which all parties, including Rite Aid, could be joined in a single action is eminently reasonable.

F.3d at 441 (holding that possibility that one court might compel arbitration while the other court might allow alternative judicial remedies to some of the plaintiffs warranted having one court adjudicate the entire case with all of the affected parties before it); Keal, 173 F.3d at 918-19 (holding that continuing without unjoined party was impermissible because that party could file suit in another forum to protect its interests and subject joined party to conflicting legal judgments); Schlumberger, 36 F.3d at 1286-87 (holding that the potential for factual "whipsaw" from two pending cases warranted having one court adjudicate the entire matter with all the parties before it); cf. Coastal Modular, 635 F.2d at 1108 (affirming trial court's denial of joinder of the Navy as a party under Rule 19(a) where the defendant "could only theorize the possibility that the Navy would institute suit against it"). In light of these considerations, we conclude that the district court did not abuse its discretion in concluding that Rite Aid was a necessary party to this declaratory judgment action.

B.

Because Rite Aid is a necessary party to this litigation and its joinder would destroy complete diversity, we must next determine whether the district court abused its discretion in concluding that Rite Aid is an indispensable party under Rule 19(b). At the outset, we note that "precedent supports the proposition that a contracting party is the paradigm of an indispensable party." Travelers Indem. Co. v. Household Int'l, Inc., 775 F. Supp. 518, 527 (D. Conn. 1991) (citing cases). With this principle in mind, we address the factors outlined in Rule 19(b) seriatim. "A Rule 19(b) analysis is not mechanical; rather it is conducted in light of the equities of the case at bar." Schlumberger, 36 F.3d at 1287.

The first Rule 19(b) factor asks to what extent a judgment rendered in the non-party's absence will prejudice that person or those already parties. This factor addresses many of the same concerns as Rule 19(a)(2). See Keal, 186 F.3d at 919. As we noted in our Rule 19(a) analysis, if this suit were to proceed without Rite Aid, Rite Aid would be impaired or impeded from protecting its separate and distinct interest in the district court's determination of Rite Aid's reporting requirements under the policy and other agreements while National Union could be whipsawed by inconsistent judgments. The prejudice

11

to Rite Aid if this suit is not dismissed is particularly strong given that Rite Aid negotiated and entered into the policy, and this suit concerns Rite Aid's conduct. See H.D. Corp. v. Ford Motor Co., 791 F.2d 987, 993 (1st Cir. 1986) (noting that first Rule 19(b) factor favored finding that parent corporation was indispensable to complaint brought against subsidiary where complaint was largely directed against parent corporation and parent corporation was signatory to agreement underlying breach of contract claims in complaint); Envirotech Corp. v. Bethlehem Steel Corp., 729 F.2d 70, 75-76 (2d Cir. 1984) (noting that parent corporation was indispensable to breach of contract counterclaims against subsidiary in part because parent corporation was the sole obligor on three of the contracts at issue).

The second factor to consider under Rule 19(b) is whether a court can tailor relief to lessen or avoid the prejudice to the absent person or to those already parties. As to this factor, we cannot fathom how the district court could have tailored its relief to lessen or avoid prejudice to Rite Aid and National Union. In order to reach a judgment on the merits in this action, the district court could not have avoided addressing the notice provisions of the policy and ancillary agreements, which are also at issue in the Pennsylvania state court action. See Owens-Illinois, 186 F.3d at 442 (noting that in order to reach merits of the petition to compel arbitration, district court could not have avoided addressing the validity and applicability of settlement agreement's arbitration provision, which was also at issue in pending state court action); Keal, 173 F.3d at 919 (noting that in order to reach merits of the case, district court could not have avoided addressing the validity of the joint grievance panel's interpretation of collective bargaining agreement). To allow both this suit and the suit in Pennsylvania state court to proceed would "complicate and enlarge what would otherwise be a relatively straightforward contract action in a single court." Acton Co., 668 F.2d at 81.

The third factor is whether a judgment without the absent person will be adequate. This factor implicates "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111 (1968). As the district court noted, if the instant suit proceeded without Rite Aid, it is possible that a judgment could be rendered against RASC for failure to provide timely notice. It is also possible that if RASC brought a subsequent action against Rite Aid,

12

RASC could again have a judgment rendered against it if Rite Aid proves that it provided timely notice on behalf of RASC, resulting in an inconsistent verdict. We agree with the district court that because National Union, Rite Aid, and RASC are all proper parties in the Pennsylvania state court action, and all claims and potential cross-claims can be heard in one case, resolving the entire controversy in that court will promote "[t]he public interest in avoiding piecemeal and inefficient litigation." Acton Co., 668 F.2d at 81.

Finally, Rule 19(b) directs us to determine whether dismissal for nonjoinder will leave the plaintiff with an adequate remedy. We see no reason, and National Union posits none, why the Pennsylvania state court will not provide an adequate remedy for the parties in this case. In fact, we believe that the Pennsylvania state court will be a more convenient place for adjudication of this matter because both National Union and Rite Aid are Pennsylvania citizens, and the plaintiffs in the underlying lawsuits, who are residents of South Carolina, are no longer involved in this dispute concerning coverage. See Owens-Illinois, 186 F.3d at 442 (noting that West Virginia state court "is likely the best place for adjudication of this matter since all of the Plaintiffs work at the same location and will share many witnesses and exhibits in the event a trial is held"). National Union's plea that it prefers to be a plaintiff in a declaratory judgment action rather than a defendant in a bad-faith lawsuit rings hollow, because if the Pennsylvania state court finds that there is no coverage under the policy, it need not reach the bad-faith issue. Because all four factors favor a finding that Rite Aid is an indispensable party, we conclude that the district court did not abuse its discretion in determining that it could not "in equity and good conscience" allow this case to proceed in the absence of Rite Aid.

III.

In sum, we conclude that the district court did not abuse its discretion in concluding that Rite Aid was a necessary and indispensable party to National Union's declaratory judgment action. Because Rite Aid's joinder would destroy complete diversity of citizenship, National Union's complaint must be dismissed. We, therefore, affirm the judgment of the district court.

AFFIRMED

13