**SUNRISE FINANCIAL, INC., a Utah corporation, and UTCO Associates, Ltd., a Utah limited partnership, Plaintiffs,**

v.

**PAINEWEBBER, INC., a Delaware corporation, Peter O. Bistrian, CKN Holding, Inc., Specialty Financing International, Inc., Pasquale A. Basile, Intercontinental Assets Corp., and Joseph Steencken, Defendants.**

Civil No. 96–CV–0060S.

United States District Court,
D. Utah,
Central Division.

Dec. 11, 1996.

---

**1005**

David R. King, Kruse Landa & Maycock, Salt Lake City, UT, for Plaintiffs.

Keith E. Taylor, Erik A. Christiansen, Daniel M. Allred, Parsons Behle & Latimer, James S. Jardine, Robert A. Thorup, Ray Quinney & Nebeker, Salt Lake City, UT, Stephen O'Donnell, Christopher A. Barber, Sheila M. Reilly, Coffield Ungaretti & Harris, Chicago, IL, for Defendants.

**1.** The plaintiffs requested oral argument on the motions, arguing that they "raise numerous complex issues of law and fact." (Request for a Hearing Date at 2.) The court finds that these issues are not so complex that oral argument is needed. Accordingly, the request for oral argument is denied. *See* D.Ut. Rule 202(d).

## ORDER

SAM, District Judge.

The defendants Pasquale A. Basile and PaineWebber, Inc., filed motions pursuant to Fed.R.Civ.P. 12(b)(6) and 12(b)(7) to dismiss for failure to state a claim and failure to join necessary parties. The plaintiffs submitted two affidavits in response, which Paine-Webber moved to strike. For reasons set forth more fully below, the court grants in part and denies in part the motion to strike and denies the motions to dismiss.[1]

### I. Background

The plaintiffs are Sunrise Financial, Inc., a Utah corporation, and UTCO Associates, Ltd., a Utah limited partnership. According to their complaint, they and two individuals, Carl Martin and John E. Worthen, sold two million shares of stock in Vu–Data Corporation at $1 a share, for which they never received payment. Named as defendants are five buyers of the stock, the company that acted as broker, and an account representative employed by the broker.

Mr. Basile is one of the alleged buyers. The plaintiffs assert four causes of action against him and the other buyers: violation of federal and state securities law, common law conversion, and breach of contract.[2]

PaineWebber acted as broker. The plaintiffs assert five causes of action against it and its employee: violation of federal and state securities law, common law conversion, negligence, and breach of fiduciary duties.

The defendants argue that Mr. Martin and Mr. Worthen are indispensable parties and dispute whether the plaintiffs owned the two million shares on which their claims are based. Because allegations of sole ownership are lacking in the complaint, and for various other reasons, the defendants argue that the plaintiffs have failed to state a claim upon which relief can be granted.

**2.** In a seventh "cause of action" the plaintiffs seek injunctive relief against all defendants. As the defendants point out, this count does not state a separate cause of action.

The plaintiffs submitted the affidavits of Leland A. Martineau, manager and director of Sunrise Financial, Inc., and Alvin B. Green, an attorney who represented the sellers in their securities transactions. According to Mr. Martineau, Mr. Martin assigned all his interest in the shares to the plaintiffs, and Mr. Worthen pledged all his shares as collateral for obligations to the plaintiffs, on which he has since defaulted. (Martineau affidavit at 4.)

PaineWebber objects that the plaintiffs should not be allowed to "amend their Complaint by affidavit." (Motion to strike at 2.)

## II. Discussion

### A. Rule 12(b)(7):

*Failure to join Mr. Martin and Mr. Worthen as parties*

■ Rule 12(b)(7) authorizes a motion to dismiss for failure to join a party under Rule 19. However, the motion "will not be granted because of a vague possibility that persons who are not parties may have an interest in the action." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1359 (2d ed. 1990). The proponent of a 12(b)(7) motion has the "burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citizen Band Potawatomi Indian Tribe v. Collier*, 17 F.3d 1292, 1293 (10th Cir.1994). *See also Ute Distribution Corp. v. Secretary of the Interior*, 934 F.Supp. 1302, 1306 (D.Ut.1996). The proponent's burden can be satisfied by providing "affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence." *Citizen Band*, 17 F.3d at 1293 (quoting *Martin v. Local 147, Int'l Bhd. of Painters*, 775 F.Supp. 235, 236–37 (N.D.Ill.1991), in turn quoting *Federal Practice and Procedure* at 427).

In support of his motion, Mr. Basile relies solely on the complaint's allegation that Mr. Martin and Mr. Worthen were also sellers of the stock at issue. (Complaint, ¶ 11; Mr.

Basile's memorandum in support of motion to dismiss at 3.) PaineWebber joins in Mr. Basile's argument "since Plaintiffs admit that these two had an undisclosed ownership interest in the shares." (PaineWebber's motion to dismiss at 4; *see* PaineWebber's memorandum in support of motion to dismiss at 15.)

■ It was not improper for the plaintiffs to submit Mr. Martineau's affidavit in response to the defendants' 12(b)(7) motion. A district court's ruling on such a motion is "necessarily based upon the allegations of the complaint and the affidavits and other proofs adduced in contradiction or support thereof." *Estes v. Shell Oil Co.*, 234 F.2d 847, 849 (5th Cir.1956).

PaineWebber also objects that the plaintiffs' affidavits do not comply with Fed. R.Civ.P. 56(e) because they are not based on personal knowledge, do not set forth admissible facts, and do not show that the affiant is competent to testify. (Motion to strike at 2.)

The plaintiffs concede that part of their affidavits are inappropriate. They no longer ask the court to consider ¶¶ 6 and 7 of the Martineau affidavit or any portion of the Green affidavit. (Memorandum in opposition to motion to strike at 3, 5 & 7.)

■ Most of the remaining paragraphs of the Martineau affidavit are based on personal knowledge. The affidavit is supported by various exhibits, including an agreement by Sunrise Financial, Inc., Mr. Martin and Mr. Worthen to purchase 825,000 shares of Vu–Data stock from its prior owner in February 1995 and an agreement by Mr. Martin to assign all his interest in any Vu–Data shares to the plaintiff.[3]

Nevertheless, the court agrees that "the Martineau affidavit does not conclusively determine Plaintiffs' rights to sue for all two million shares." (Memorandum in support of motion to strike at 6.) For example, as to the 1,170,000 shares which Mr. Worthen was said to own, the affidavit explains only that because he defaulted on an obligation to

---

**3.** The latter agreement also purports to assign Mr. Worthen's interest to the plaintiffs, but his signature is missing.

them, plaintiffs "deem themselves to be the owners of Worthen's shares." (Martineau affidavit at 4.)

In any event, the defendants have the burden of proof on their motion, and they have not offered any evidence to contradict Mr. Martineau's affidavit. Even if Mr. Martin and Mr. Worthen had an undisclosed interest in the shares, it is not necessary to join them as parties if they have since assigned or pledged all their interest to the plaintiffs. *See Production Credit Ass'n v. Alamo Ranch Co.*, 989 F.2d 413, 417 (10th Cir.1993) (district court's finding that assignor of accounts receivable was not an indispensable party was not clearly erroneous where there was evidence of a valid assignment to the plaintiff); *Robert L. Ferman & Co. v. General Magnaplate Corp.*, 33 F.R.D. 326, 329 (D.N.J.1963) (where defendant acquired stock once owned by an underwriter, that underwriter was no longer a necessary or indispensable party). *Cf. Phoenix Ins. Co. v. Woosley*, 287 F.2d 531, 533 (10th Cir.1961) (assignor was necessary party where assignment was only partial).

The defendants' motions to dismiss for failure to join indispensable parties, are therefore denied.

### B. Failure to state a claim

On the other hand, when matters outside the pleadings are presented with a motion to dismiss under Rule 12(b)(6), the court should exclude them or treat the motion "as one for summary judgment," to be disposed of as provided in Rule 56. Fed. R.Civ.P. 12(b). *See De Wit v. Firstar Corp.*, 879 F.Supp. 947, 960 & 992 (N.D.Iowa 1995) (setting forth differing standards for 12(b)(6) and 12(b)(7) motions); *Baum v. Gillman*, 1976 WL 1214 (D.Ut. Feb. 17, 1976) (on 12(b)(6) motion, striking affidavit submitted by plaintiffs to amend or supplement their antitrust claim to show that defendant's conduct affected interstate commerce and dismissing claim where complaint itself failed to allege that element.)

The court elects to exclude the affidavits in considering whether the plaintiffs have stated a claim upon which relief can be granted. Nevertheless, many of the defendants' arguments in support of their 12(b)(6) motions are really challenges to the plaintiffs' standing. As Mr. Basile points out, "only purchasers or sellers of securities have standing to sue under Rule 10b–5." (Mr. Basile's memorandum in support of motion to dismiss at 5.)

The Supreme Court has explained that affidavits are admissible in support of the plaintiffs' standing:

> For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. [Citation omitted.] At the same time, *it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing.* If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

*Warth v. Seldin*, 422 U.S. 490, 501–502, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975) (emphasis added).

Here, the complaint and affidavits are sufficient to show that the plaintiffs have standing to sue for the loss of part or all of the stock. At a later stage in the proceedings, to recover damages based on all two million shares, the plaintiffs would need to show more conclusive evidence of the nature and extent of their ownership of the shares.

The court will now examine whether the plaintiffs have alleged elements necessary to state each claim.

#### 1. Federal and states securities law claims

The defendants maintain that the federal and state securities law claims are deficient for failure to allege facts showing a "purchase or sale" of securities.

Mr. Basile cites *Watts v. Des Moines Register & Tribune*, 525 F.Supp. 1311, 1319 (S.D.Iowa 1981), for the proposition that "some transfer of ownership is essential to

comply with the purchase or sale element" of a claim under § 10(b) of the Securities Exchange Act. (Mr. Basile's memorandum in support of motion to dismiss at 5.) In *Watts,* the court observed that "a purchase or sale must be defined broadly ... and may encompass transactions that bear little resemblance to conventional purchases and sales." *Id.* Nevertheless, the court held that the mere creation of a voting trust did not amount to a "purchase or sale" because it did not effect a fundamental change in the nature of the participants' investments. *Id.*

▇ Here, the plaintiffs allege that they— together with Mr. Martin and Mr. Worthen—were the sellers of 2 million shares of Vu–Data Corporation stock, that the shares were delivered to PaineWebber or its account representative, that PaineWebber delivered the shares to the defendants buyers, and that the defendants have not paid for the shares. (Complaint at 4–7.)

The defendants argue that the plaintiffs "must plead with particularity that they were the registered owners of the two million certificated and uncertificated shares and that, following the alleged sale to defendants, the issuer transferred that registered ownership to the defendant Buyers." (Mr. Basile's memorandum in support of motion at 7–8.)[4] However, it is the "circumstances constituting fraud" which must be stated with particularity, not the incidents of plaintiffs' ownership of the stock. Fed.R.Civ.P. 9(b). The plaintiffs have stated the circumstances constituting fraud with particularity. (*See* Complaint, ¶¶ 23 & 25.)

▇ PaineWebber argues that these allegations do not raise a "strong inference" of fraudulent intent. The court disagrees. The plaintiffs specify four material misrepresentations made by PaineWebber, then assert that "PaineWebber intended to utilize and did use its position as intermediary in the sale to defraud the Sellers." (Complaint, ¶ 26.) Moreover, they allege:

In direct violation of the instructions issued by Green as agent for the owners of the securities, and with knowledge that its customers had paid no consideration whatsoever for the 2 million shares of Vu–Data, PaineWebber delivered 2 million shares of Vu–Data to [other defendants] by delivering said shares to accounts designated by [those defendants] at other broker-dealer firms.

(*Id.,* ¶ 19.)

▇ PaineWebber also insists that the federal claim is not viable because "it alleges only secondary liability" on the part of Paine-Webber. (PaineWebber's memorandum in support of motion to dismiss at 4.) In *Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), the Supreme Court held there is no private cause of action for aiding and abetting under § 10(b) of the Securities Exchange Act. However, the Court explained:

The absence of § 10(b) aiding and abetting liability does not mean that secondary actors in the securities markets are always free from liability under the securities Acts. *Any person or entity,* including a lawyer, accountant, or bank, *who employs a manipulative device or makes a material misstatement* (or omission) on which a purchaser or seller of securities relies *may be liable as a primary violator* under 10b–5, assuming all of the requirements for primary liability under Rule 10b–5 are met.

*Id.* at ——, 114 S.Ct. at 1455.

The plaintiffs have alleged the elements of primary liability against PaineWebber. Although their allegations of secondary liability are ineffectual, they also assert that Paine-Webber itself made misrepresentations upon which the plaintiffs relied.[5]

▇ PaineWebber insists that the federal claim shows no loss causation. Again, the court disagrees. The plaintiffs allege that

---

4. In this circuit, the dismissal of a complaint for failure to satisfy Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6). *Seattle–First Nat'l Bank v. Carlstedt,* 800 F.2d 1008, 1010 (10th Cir.1986).

5. To the extent the plaintiffs' first cause of action asserts liability for aiding and abetting or conspiracy to commit securities fraud, the claim is hereby dismissed.

PaineWebber's conduct in failing to return the stock if payment were not tendered and in transferring the stock to other accounts without receiving payment, was the direct cause of their loss.

■ PaineWebber also argues that the Utah Uniform Securities Act would not apply to these transactions. By its terms, that Act "appl[ies] to persons who sell or offer to sell when: (a) an offer to sell is made in this state." Utah Code · Ann. § 61–1–26. The complaint asserts that an offer to sell was made by plaintiffs who are Utah entities. Subsequent evidence may show that the offer was not made here, but the allegations are sufficient for notice pleading.

■ Finally, both defendants argue that Utah Code Ann. § 61–1–22, a provision of Utah's Uniform Securities Act, is unconstitutionally vague as applied to defendants who purchased securities. Subsection (a) gives a buyer or a seller who is defrauded by the other in the sale of securities, a right to sue to recover "the consideration paid for the security," with interest, costs and attorney fees, "less the amount of any income received on the security, upon the tender of the security *or for damages if he no longer owns the security*" (emphasis added). Subsection (b) provides:

> Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at 12% per year from the date of disposition.

Mr. Basile maintains that a constitutional problem "arises in the balance," because "the remedies provided therein make no sense" when applied in an action against a purchaser. (Mr. Basile's memorandum in support of motion to dismiss at 9.)

Although some of its terms are more appropriate in actions against sellers, rather than buyers, the court does not find this statute unconstitutionally vague. The conduct that is prohibited is very clear. Moreover, the court could fashion an appropriate remedy from its terms, once the exact nature of the plaintiffs' ownership is determined. For example, if evidence shows that the plaintiffs no longer own the securities but

were never given any consideration for selling them, they would be entitled to another measure of "damages" than one based on "the consideration paid."

### 2. Conversion, negligence & breach of fiduciary duty

■ Defendants say allegations of ownership are deficient in the conversion claim. "A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." *Richins v. Industrial Constr., Inc.*, 502 F.2d 1051, 1054 (10th Cir.1974) (quoting *Allred v. Hinkley*, 8 Utah 2d 73, 328 P.2d 726, 728 (1958)). Thus, a plaintiff must allege entitlement to the property that was converted. *See Knickerbocker v. Cannon*, 912 P.2d 969 (Utah 1996) (determining the extent of a husband's ownership of various items of property which were allegedly converted).

■ The plaintiffs allege that they and the other two sellers had "ownership rights" to the shares they agreed to sell. (Complaint, ¶ 40.) The court believes this allegation is sufficient for purposes of notice pleading.

■ Finally, PaineWebber points out that the conversion, negligence, and breach of fiduciary duty claims fail to allege that PaineWebber had authority from CKN to transfer $2 million of its client's funds to them. The court believes such authorization is not a necessary element of the plaintiffs' common law claims. The plaintiffs have stated claims for relief, although the evidence may ultimately support a finding, for example, that PaineWebber owed them no fiduciary duty.

### 3. Breach of contract

■ Mr. Basile insists that the breach of contract claim is deficient for failure to allege that the plaintiffs sold all two million shares. That is not a necessary element of a breach of contract claim, but it will be relevant in determining any damages that are awarded.

### III. Order

IT IS THEREFORE ORDERED that PaineWebber's motion to strike the plaintiffs' affidavits is granted in part and denied in part, as outlined above.

IT IS FURTHER ORDERED that Mr. Basile's and PaineWebber's motions to dismiss are denied.