Juan RIVERA ROJAS, et al., Plaintiffs,

v.

LOEWEN GROUP INTERNATIONAL,
INC., et al., Defendants.

No. Civ. 95–1196(HL).

United States District Court,
D. Puerto Rico.

March 30, 1998.

Rodrigo Otero–Suro, Otero Suro & Otero Suro, San Juan, PR, Luis F. Montijo, Hato Rey, PR, Carlos T. Gonzalez–Contreras, Carlos T. Gonzalez Contreras Law Offices, Guaynabo, PR, for Plaintiffs.

Juan C. Guzman–Rodriguez, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is a motion to dismiss pursuant to Federal Rule 12(b)(7) filed by Defendants The Loewen Group, Inc. ("Loewen") and Loewen Group International, Inc. ("LGII"). The movants are non–Puerto Rico corporations. Plaintiffs are Juan Rivera Rojas ("Juan Rivera"), his wife Leyda Rivera Vega, their conjugal partnership, and Carlos Rivera Bustamente ("Carlos Rivera"); they are all Puerto Rico residents. Carlos Rivera is the son of Juan Rivera. Plaintiffs bring this claim for breach of contract for a series of agreements that the parties entered into starting in October 1993. Jurisdiction is based on diversity of the parties. 28 U.S.C.A. § 1332 (West 1993 & Supp.1998).

In order to resolve the present controversy, it is necessary to provide a brief history of the numerous agreements that the parties have entered into in the course of the sale of a funeral home business. In 1993 Juan Rivera was the owner of El Señorial funeral home and cemetery in Puerto Rico. On October 14, 1993, Juan Rivera and LGII entered into an initial agreement whereby LGII or a subsidiary would acquire all the assets of Juan Rivera's funeral business in exchange for $4,465,000. The agreement also provided that Juan Rivera and Carlos Rivera would be given five-year management agreements with the funeral business; that if certain sales goals were met, Juan Rivera would receive additional payments on the third, sixth, and tenth anniversaries of the sale; that he would obtain a five percent partnership interest in either LGII or a nominee; and that the parties would later enter into a more detailed purchase agreement setting forth all the terms and conditions of the sale.[1] The more detailed agreement was entered into on December 14, 1993, between Juan Rivera, his wife, and LGII. In addition to covering the details of the sale of the funeral business, the agreement reiterated the provisions regarding possible additional future payments to Juan Rivera and the five-year management agreements.[2]

On January 21, 1994, Defendants formed Camposanto PR, Inc., as a Puerto Rico corporation.[3] On January 25, 1994, the parties entered into another round of agreements. They included the following:

(1) A loan agreement between Camposanto PR, Inc., El Señorial Funeral Home,

---

1. Docket no. 1, exhibit A.

2. Defendants' exhibit A from hearing of October 15, 1997.

3. Defendants' exhibit B from hearing of October 15, 1997.

Inc., El Señorial Memorial Park, Inc., and Plaintiffs. Camposanto agreed to loan the El Señorial corporations $251,393.59 until the closing of the sale occurred. Plaintiffs appeared as guarantors of the loan. The agreement stated that LGII had designated Camposanto as the entity which, in the course of the purchase of the El Señorial corporations, would acquire all Plaintiffs' shares in them.[4]

(2) Letter agreements signed by Plaintiffs and directed to LGII and Camposanto. In these letters, Plaintiffs guaranteed the payment of the loan made by Camposanto.[5]

(3) A promissory note signed by Juan Rivera, his wife, and the two El Señorial corporations promising to pay Camposanto the amount of the loan.[6]

(4) A stock pledge agreement between Juan Rivera, his wife, Camposanto, and LGII pledging all of Juan Rivera's stock in the two El Señorial corporations as security on the loan.[7]

(5) A management services agreement between Plaintiffs, the two El Señorial corporations, Camposanto, and LGII. The El Señorial corporations agreed to retain Camposanto and LGII as consultants until the loan was paid off. Under this agreement, Camposanto and LGII would provide assistance and guidance in the management of the funeral companies. Juan Rivera and Carlos Rivera remained responsible for the day-to-day management of the business, but any management decisions which could have "a material financial effect" on the companies had to be approved by Camposanto and LGII.[8]

On February 28, 1994, Camposanto purchased the real estate, fixtures, and equipment that belonged to the two El Señorial corporations.[9] The closing date for the sale of the corporations was May 20, 1994.[10] At the closing the following agreements were executed:

(1) Camposanto employment agreements with Juan Rivera and Carlos Rivera. The agreements stated that Camposanto owns and operates funeral homes in Puerto Rico. Plaintiffs were to be employed as regional managers in Puerto Rico. For their services they were to be paid annual salaries of $100,000 and would be entitled to additional bonuses based on sales commissions.[11]

(2) A shareholder agreement between Neweol Investments, Inc., Juan Rivera, and Carlos Rivera. Neweol is a wholly owned subsidiary of LGII. In the agreement the parties acknowledged that Camposanto had been created. The agreement further provided that Camposanto would have 100 issued shares, of which Juan Rivera and Carlos Rivera would receive together five "Class A" shares, Neweol would receive 90 Class B shares, and Robert Russell would receive 5 Class A shares. Class A shares were voting shares, but they did not have the right to dividends or earnings. Plaintiffs were given the right to name one of Camposanto's five directors. Plaintiffs were also responsible for providing Camposanto with $165,000 in capital.[12]

(3) Non-competition agreements between LGII and Plaintiffs. Plaintiffs agreed that they would not compete with LGII or Camposanto for a period of two years following the expiration of their employment agreements.[13]

(4) Assignment and assumption agreements between LGII and Camposanto. LGII assigned to Camposanto all its rights under the initial agreement of October 14,

4. Docket no. 1, exhibit C.

5. Docket no. 1, exhibit C.

6. Docket no. 1, exhibit C.

7. Docket no. 1, exhibit C.

8. Docket no. 1, exhibit C.

9. Docket no. 1, at 17; Defendants' exhibit D for October 15, 1997, hearing.

10. Docket no. 22, at 7.

11. Docket no. 8, exhibits A & B.

12. Docket no. 10, exhibit 3.

13. Plaintiffs' exhibits 3 & 4 for October 15, 1997, hearing.

1993, and the purchase agreement of December 14, 1993. Camposanto assumed all of the terms and obligations of these agreements. Additionally, LGII guaranteed the payment and performance of Camposanto's obligations under the agreements.[14]

Notwithstanding this abundance of papered agreements, the relationship between the parties went awry. In their complaint, Plaintiffs allege that Defendants have engaged in a scheme of misrepresentation and noncompliance. Specifically, they claim that Defendants concealed information regarding unspecified moneys that were owed to Plaintiffs; that Defendants induced Plaintiffs to sell the funeral business by falsely misrepresenting to them that they would be given control of Camposanto; that Plaintiffs were coerced into signing the purchase agreement, with the result that Juan Rivera has been placed in a dire economic position; that Defendants dishonored their contractual commitments and withdrew capital which had been set aside for investment in the business; that Defendants forced Plaintiffs to cede certain benefits that were originally agreed to in the negotiations; that Defendants took advantage of nonrelated criminal proceedings against Plaintiffs to amend certain conditions of the sale; that as a result of Defendants' negotiation demands, Plaintiffs were placed in a "dire economic situation" and forced to ask Defendants for a loan; that the loan and management agreements of January 25, 1994, were intended to reduce Plaintiffs' profits from the sale; and that Plaintiffs were not in an equal bargaining position with Defendants and were therefore forced to enter into these agreements. Plaintiffs further claim that their employment conditions with Camposanto subjected them to humiliation and undue pressure and threatened their economic condition; that Defendants have used Camposanto to utilize income generated by Camposanto at Plaintiffs' expense; and that Defendants have used Camposanto to wrongfully and negligently manage the affairs of the funeral business. Plaintiffs also allege that Defendants used Camposanto to conceal material information concerning profit and expense generated pursuant to the purchase agreement; to conceal material information regarding business opportunities; to fail to pay Plaintiffs the balance of the purchase price and agreed-to commissions; to misappropriate profits; and to mismanage or divert business opportunities that otherwise would have generated substantial profits. Plaintiffs seek damages, specific performance, and any other relief which the court may deem equitable or just.[15]

In their motion to dismiss, Defendants claim that Camposanto is a necessary and indispensable party to this action. Because Camposanto is a Puerto Rico corporation, its joinder would destroy diversity and require the dismissal of this action. In their opposition, Plaintiffs argue that Camposanto is not an indispensable party and that it is merely the alter ego of Defendants. On October 15, 1997, the Court held a hearing on this issue, at which the parties presented evidence and made arguments. For the reasons set forth below, the Court grants the motion to dismiss.

## DISCUSSION

▪ Defendants bring their motion pursuant to Federal Rule 12(b)(7). Generally, a Rule 12(b)(7) motion should be granted when there is an absent party without whom complete relief will not be possible in the case or whose interest in the controversy is such that to proceed without this party might prejudice it or the parties already present in the case. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1359, at 424 (2d ed.1990). A court ruling on a 12(b)(7) motion may consider evidence outside the pleadings. *Albahary v. City of Bristol,* 963 F.Supp. 150, 156 n. 2 (D.Conn.1997). The movant has the burden of showing why the absent party should be joined. *Sunrise Financial, Inc. v. PaineWebber, Inc.,* 948 F.Supp. 1002, 1006 (D.Utah1996); 5A Wright & Miller, *Federal Practice and Procedure* § 1359, at 426–27. To meet this burden, the movant may submit affidavits or other rele-

14. Docket no. 10, exhibits 1 & 2.

15. Docket no. 1, at 2 & 27.

vant evidence. *Sunrise Financial,* 948 F.Supp. at 1006.

### 1. Rule 19(a)—Necessary party

 A Rule 12(b)(7) motion is one to dismiss for failure to join a party under Rule 19. A court applying Rule 19 must keep in mind the rule's practical objective: to attain "judicial economies of scale" by resolving related disputes in a single lawsuit, while also preventing that single lawsuit from becoming hopelessly complex or unending. *Pujol v. Shearson American Express, Inc.,* 877 F.2d 132, 134 (1st Cir.1989) (quoting *Smuck v. Hobson,* 408 F.2d 175, 179 (D.C.Cir.1969)). A Rule 19 analysis is a two-step process. *Pujol,* 877 F.2d at 134. The court must first determine whether it is feasible to join the absent party. Fed.R.Civ.P. 19(a); *Pujol,* 877 F.2d at 134. This is a determination of whether the absent party is a "necessary" one.[16] In applying Rule 19(a), a court must decide whether considerations of fairness and equity require that the absent party be joined. *Pujol,* 877 F.2d at 134. If a party is not a necessary one under Rule 19(a), it cannot be an indispensable one under 19(b), and the analysis ends. *Delgado v. Plaza Las Americas,* 139 F.3d 1, 3 n. 2 (1st Cir.1998). Under Rule 19(a) a party is necessary if

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a). The two clauses of Rule 19(a) are phrased in the disjunctive, and a court should treat them as such. *Janney,* 11 F.3d at 405. Thus, a party is a necessary one if it meets the requirements of either 19(a)(1) or 19(a)(2). Generally, in breach of contract actions, all parties to the contract are necessary ones. *See Acton Co., Inc. of Mass. v. Bachman Foods, Inc.,* 668 F.2d 76, 78–79 (1st Cir.1982); *E & E Inv., Inc. v. Simmons Co.,* 169 F.R.D. 467, 471–72 (D.P.R.1996); *F & M Distributors v. Am. Hardware Supply,* 129 F.R.D. 494, 497–98 (W.D.Pa.1990).

 The gist of Defendants' argument is that Camposanto is a necessary party pursuant to 19(a)(2)(i). Subsection 19(a)(2) requires a court to consider the effect that resolution of the controversy will have on the absent party. *Janney,* 11 F.3d at 406. Additionally, subsection (a)(2)(i) requires a determination of whether a resolution of the controversy without the absent party will impede that party's ability to protect its interests in the subject of the litigation. *Id.* A court should consider the potential res judicata effects a judgment would have on the absent party. *Acton,* 668 F.2d at 78–79. A subsidiary may be a necessary party if plaintiffs seek to impose liability on a parent corporation for the acts of the subsidiary, *Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553, 559–60 (5th Cir.1985), if the subsidiary entered into contracts which are at the core of the controversy, *F & M Distributors,* 129 F.R.D. at 497–98, or if the subsidiary—not the parent—is the employer of plaintiffs in a dispute over an employment agreement, *Lopez v. Shearson American Express, Inc.,* 684 F.Supp. 1144, 1146–48 (D.P.R.1988).

 A review of Plaintiffs' claims leads to the conclusion that Camposanto is a necessary party to this action. Plaintiffs claim that Defendants breached the parties' contracts and that they used Camposanto to commit these breaches. Specifically, they claim that Defendants used Camposanto to mismanage the funeral business, that their employment agreements with Camposanto have subjected them to humiliating conditions, and that they were forced into an onerous loan agreement with Camposanto. They also allege that Defendants have used Camposanto to utilize incomes generated at

---

**16.** Rule 19(a) uses the word "feasible" rather than "necessary." The term "necessary" is derived from an earlier version of the rule. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 404 n. 4 (3rd Cir.1993).

Plaintiffs' expense and to misappropriate profits. In order to adjudicate these claims, it will be necessary to consider the conduct of Camposanto throughout these transactions. A finding in favor of Plaintiffs would include findings that the funeral business was mismanaged, that Plaintiffs' employment agreements were breached, that Plaintiffs were forced into an unlawful loan agreement, and that moneys from the business were misappropriated.

Camposanto certainly has an interest in the litigation of these issues which pertain to contracts to which Camposanto is a party. It should be afforded the opportunity to defend against these allegations. The record indicates that Camposanto is the entity that has purchased the funeral business' real estate and equipment and that has managed the business. If Camposanto is not joined in this case, the appropriateness of its conduct in both the treatment of Plaintiffs and the management of the funeral business will be adjudicated in its absence. A ruling regarding the funeral business' management or profits could adversely affect Camposanto, the entity in charge of operating the business. Moreover, in addition to money damages, Plaintiffs seek specific performance and ask the Court for any relief it deems equitable or just.[17] If the Court is to rule on how these contracts-contracts to which Camposanto is a signatory-are to be performed or enforced, Camposanto has an interest in this litigation. Favorable rulings for Plaintiffs could bind Camposanto under the doctrine of res judicata and collateral estoppel. *See F & M Distributors,* 129 F.R.D. at 498; *Lopez,* 684 F.Supp. at 1149. Camposanto's ability to protect its interests in this controversy would therefore be impeded. Thus, the Court finds that Camposanto is a necessary party to this dispute.

### 2. *Rule 19(b)—Indispensable party*

Once a court determines that a party is a necessary one under Rule 19(a), it must then determine whether it is also an indispensable one under 19(b). This analysis is done on a case-by-case basis. *Provident Tradesmens B & T Co. v. Patterson,* 390 U.S.

102, 118–19, 88 S.Ct. 733, 743, 19 L.Ed.2d 936 (1968). The court must determine whether, in the interests of efficiency and fairness, it is so important to join the absent party that the case should not proceed at all. *Pujol,* 877 F.2d at 134. A contracting party is the paradigmatic example of an indispensable party. *Rashid v. Kite,* 957 F.Supp. 70, 74 (E.D.Pa.1997); *E & E,* 169 F.R.D. at 472; *Travelers Indemnity Co. v. Household Int'l Inc.,* 775 F.Supp. 518, 527 (D.Conn.1991) (citing cases). In reaching its determination, the court must consider four factors:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b). These four factors are overlapping. *Travelers,* 775 F.Supp. at 526. Additionally, the Supreme Court has articulated four corresponding interests which the rule's four factors promote: (1) the interest of the absent party, (2) the defendant's interest in avoiding inconsistent relief, multiple litigation, or sole responsibility for a liability which it shares with an absent party, (3) the interests of the public and the courts in consistent, complete, and efficient settlement of cases, and (4) the plaintiff's interests in having an appropriate forum. *Provident,* 390 U.S. at 108–11, 88 S.Ct. at 737–39; *H.D. Corp. of Puerto Rico v. Ford Motor Co.,* 791 F.2d 987, 992–93 (1st Cir.1986).

The first Rule 19(b) factor is the extent to which a judgment rendered in the party's absence could be prejudicial to it or to those already parties. The corresponding *Provident* interest is Camposanto's interest in this controversy. *See Provident,* 390 U.S. at 110, 88 S.Ct. at 738. The circumstances of the present case are such that this factor/interest closely parallels the Court's analysis as to whether Camposanto is a necessary party

17. Docket no. 1, at 2 & 27.

pursuant to Rule 19(a)(2)(i). As discussed above, Camposanto was an alleged participant in the conduct of which Plaintiffs' complain. Camposanto is the operator of the business and is a signatory to a number of the contested contracts. Thus, a favorable ruling for Plaintiffs would necessarily be unfavorable to Camposanto. Therefore, it has an interest in the outcome of this litigation. *See Acton,* 668 F.2d at 81; *Lopez,* 684 F.Supp. at 1149.

The second factor is the extent to which measures may be taken to avoid any prejudice. The corresponding interest is the defendant's interest in avoiding inconsistent relief, multiple litigation, or sole responsibility for a liability which it shares with an absent party. *Provident,* 390 U.S. at 110, 88 S.Ct. at 738. Plaintiffs have suggested no means by which the Court could tailor relief in this case so as to avoid prejudice. This controversy has also spawned a lawsuit in the local courts.[18] All of the parties would be able to participate in that case. None of the concerns regarding prejudice or complications over incomplete relief would be present in a single lawsuit in the local court. Therefore, this factor favors finding Camposanto to be indispensable. *See H.D. Corp.,* 791 F.2d at 993; *Acton,* 668 F.2d at 81.

The third factor is whether a judgment rendered without the absent party's presence will be adequate. The corresponding *Provident* interest is that of the public and the courts in the complete and efficient settlement of controversies. *Provident,* 390 U.S. at 111, 88 S.Ct. at 739. As discussed in the preceding paragraph, this case could be resolved more simply by a single lawsuit in the local courts. The concerns of incomplete relief of inefficiency would not be present. Thus, this factor also favors a finding that Camposanto is indispensable. *See H.D. Corp.,* 791 F.2d at 993; *Acton,* 668 F.2d at 81.

Lastly, the Court must consider whether the plaintiff will have an adequate forum if the action is dismissed. *Provident,* 390 U.S. at 109, 88 S.Ct. at 738. In the local court case, Plaintiffs have reserved the right to bring in that case the claims which they are making before this Court.[19] In the present case, Plaintiffs have not shown that they will be unable to obtain relief for their claims in the local court. The Puerto Rico local courts would provide an adequate forum for Plaintiffs' claims. *See Gay v. AVCO Financial Services, Inc.,* 769 F.Supp. 51, 57 (D.P.R. 1991); *Lopez,* 684 F.Supp. at 1150. Thus, this last factor also supports a finding of indispensability. *See H.D. Corp.,* 791 F.2d at 993; *Acton,* 668 F.2d at 81. Therefore, based on all of the above, the Court concludes that Camposanto is a necessary and indispensable party to this action.

*3. Plaintiffs' opposition to the motion to dismiss*

In opposition to the motion to dismiss, Plaintiffs make a number of arguments. First, they claim that Camposanto is merely the alter ego of Defendants, and that therefore Defendants are the real parties in interest. The Court held a hearing on this issue on October 15, 1997. At the hearing, Plaintiffs presented documents which they claim demonstrate the close degree of control that Defendants exercised over Camposanto. These documents indicate that Defendants' personnel were "decision makers" who guided Camposanto managers; oversaw budgetary preparations; gave instructions to Camposanto sales personnel; appointed management team members; and approved contracts.[20] Defendants presented evidence that Camposanto had been properly incorporated and had its own by-laws; that it purchased real property; that its directors held meetings and issued resolutions; it paid Puerto Rico income and property tax; kept its own financial statements and audited books; filed corporation reports with the Puerto Rico Department of State; and paid premiums to the Puerto Rico worker's compensation insurance fund and the chauffeurs' insurance fund.[21]

---

18. Docket no. 21, exhibit 1.

19. Docket no. 21, exhibit 2.

20. Plaintiffs' exhibits 6, 8, 9, 10, 12, 13, & 15 for October 15, 1997, hearing.

21. Defendants' exhibits B, C, D, E, G, H, I, J, K, L, M, N, O, P, Q, R, & S for October 15, 1997, hearing.

■ The legal standard for invoking the alter ego doctrine and piercing the corporate veil is a complex one. As a general rule, the use of the alter ego doctrine has been unsuccessful as a means to avoid the joinder of a nondiverse party. *See Freeman,* 754 F.2d at 559–60; *Gay,* 769 F.Supp. at 56; *Lopez,* 684 F.Supp. at 1147–50. As long as a parent and subsidiary have maintained corporate formalities such as separate books, taxes, minute books, bank accounts, and facilities, the corporate veil should not be pierced. *U.S.I. Properties Corp. v. M.D. Constr. Co.,* 860 F.2d 1, 7 (1st Cir.1988); *Topp v. CompAir, Inc.,* 814 F.2d 830, 836–37 (1st Cir. 1987); *de Walker v. Pueblo Int'l, Inc.,* 569 F.2d 1169, 1173 (1st Cir.1978). In order to pierce the corporate veil, there must be evidence that the integrity of the corporate form has been violated. *Taber Partners, I v. Merit Builders, Inc.,* 987 F.2d 57, 61 (1st Cir.1993); *de Walker,* 569 F.2d at 1173. The critical question is whether the two corporations have preserved their separate corporate identities. *Taber Partners,* 987 F.2d at 62. The mere fact that the parent corporation exerts a high degree of control over its subsidiary will not be sufficient. *See Taber Partners,* 987 F.2d at 62–63; *U.S.I. Properties,* 860 F.2d at 7 (allegations that parent controlled subsidiary's budget, policies, and procedures did not justify piercing the corporate veil); *Topp,* 814 F.2d at 836 (fact that parent made subsidiary's financial decisions was insufficient; two corporations had separate ledgers, minutes books, registers of stock, bank accounts, and facilities); *de Walker,* 569 F.2d at 1171–73. Even though the parent may "call the shots" with the subsidiary, their corporate identities should remain separate if the corporate formalities have been followed. *Taber,* 987 F.2d at 61–63.

■ In the present case, Plaintiffs' use of the alter ego doctrine rests heavily on conclusory allegations and lightly on supporting

evidence. It may be, as Plaintiffs' evidence indicates, that Defendants have a great deal of control over the operations of Camposanto. Defendants, however, have submitted overwhelming evidence—unrebutted by Plaintiffs—that Camposanto filed its own tax returns, kept its own minutes book, maintained separate financial records, held its own directors' meetings, filed its own corporate reports with the Puerto Rico government, and paid for its employees in Puerto Rico's workers' insurance funds. Nothing in the record indicates that Camposanto's separate corporate identity has been violated. The mere fact that Defendants called the shots in Camposanto's operations is insufficient to pierce its corporate veil. *See Taber Partners,* 987 F.2d at 61–63. In the face of abundant evidence that Camposanto's corporate forms were respected and in the absence of any contradicting evidence, the Court declines to pierce Camposanto's corporate veil.

Plaintiffs also claim that they are not suing under the contracts to which Camposanto is a party; instead, they claim, they are suing under contracts that were signed *before* Camposanto was formed. A review of the allegations in the complaint reveals that this argument is disingenuous. In their complaint, Plaintiffs refer to the employment agreement and loan agreement they entered into with Camposanto.[22] Moreover, a large part of their complaint deals with misconduct that allegedly occurred *after* Camposanto was formed and after Defendants took over the funeral home business.[23] It would be impossible to resolve this controversy without considering the conduct done after Camposanto was formed in January 1994. Thus, Plaintiffs' argument on this point is meritless.[24]

■ Lastly, Plaintiffs claim that because LGII entered into an assignment and assumption agreement with Camposanto

---

22. Docket no. 1, paragraphs 18–21, 49–51.

23. Docket no. 1, paragraphs 33, 34, 35, 37, 39, 49, 58, & 62.

24. It is worth noting that Plaintiff Carlos Rivera was not a party to the agreements that were entered into prior to the incorporation of Campo-

santo. Thus, under Plaintiffs' theory that they are only suing under the agreements entered into prior to Camposanto's incorporation, Carlos Rivera's standing to appear as a Plaintiff would come into question. Because the Court rejects Plaintiffs' theory, it is unnecessary to delve into the standing issue.

whereby it guaranteed all of Camposanto's obligations under the agreements, LGII—not Camposanto—is the real party in interest. In support of this proposition, Plaintiffs cite to the First Circuit's opinion in *Pujol.* Certain similarities and distinctions between the facts in *Pujol* and the facts here merit some discussion. In *Pujol,* the plaintiff brought a series of tort-based claims against a parent corporation arising out of her husband's employment with a Puerto Rico based subsidiary. 877 F.2d at 133. Defendant claimed that the subsidiary was a necessary and indispensable party. The First Circuit disagreed. It noted that the parties conceded that the subsidiary was a mere corporate shell and that the subsidiary and parent had identical interests. *Id.* at 135. In the present case, by contrast, the parties have not conceded that Camposanto is a corporate shell. Additionally, as discussed above, the record does not support the application of the alter ego doctrine. In fact, the record indicates that Plaintiffs own shares in Camposanto.[25] Therefore, the question of identity of interest is not as clear-cut in the present case.

The court in *Pujol* also noted that the plaintiff's claims sounded in tort and that therefore the parent and subsidiary were joint tortfeasors. *Id.* at 137. An absent joint tortfeasor is not a necessary or indispensable party. *Id.* This rule is not applicable to the present case, however, because here Plaintiffs' action is one for breach of contract. As discussed above, in breach of contract cases all contracting parties will generally be necessary and indispensable. *See Acton,* 668 F.2d at 78–79; *Rashid,* 957 F.Supp. at 74; *E & E Inv.,* 169 F.R.D. at 471–72; *Travelers,* 775 F.Supp. at 527; *F & M Distributors,* 129 F.R.D. at 497–98. The court in *Pujol* tacitly acknowledged this distinction between tort and contract cases. *See* 877 F.2d at 137 ("[O]ne might wonder *why* Rule 19 would treat 'joint tortfeasors' differently in this respect than, say, persons jointly liable under contract.") (emphasis in original). Because of these distinctions, the holding in *Pujol* is not applicable to the present case. *Cf. Gay,* 769 F.Supp. at 55–56 ("We cannot read *Pujol* so broadly as to find

that the interests of a wholly owned subsidiary are by definition aligned with the parent, or that the defense by the parent's lawyers can inherently be said to be adequate to protect the subsidiary's interest, since such a rule would effectively eliminate all subsidiary corporations from diversity calculus, a result that the *Pujol* court itself did not accept.") (emphasis omitted).

The fact that Defendants may have agreed to guarantee Camposanto's obligations is similarly unpersuasive. Camposanto is a separate corporate identity with a real interest in the outcome of this litigation. Any adjudications favorable to Plaintiffs which would be made in Camposanto's absence would certainly be adverse to its interests. There is no guarantee that Plaintiffs would not seek to enforce such an adjudication against Camposanto, notwithstanding Defendants' guarantee regarding Camposanto's obligations. Camposanto should appear in this case to defend these interests. The weight of case law on this issue supports its joinder.

WHEREFORE, the Court hereby grants Defendants' motion to dismiss (docket no. 8). Judgment shall be entered accordingly. Because Plaintiffs' claims should be brought in Puerto Rico's local court, the dismissal shall be without prejudice.

**IT IS SO ORDERED.**